Argued October 29, 1956, reversed February 13, petition
for rehearing denied March 13, 1957

KEYES *v.* CHAMBERS ET AL

307 P. 2d 498

642

*Carlisle B. Roberts,* Assistant Attorney General, Salem, argued the cause for appellant. With him on the briefs was Robert Y. Thornton, Attorney General, Salem.

*Robert H. Foley,* Bend, argued the cause for respondent. On the brief were DeArmond, Goodrich, Foley & Gray and Harry W. Pierce, Bend.

Before Warner*, Chief Justice, and Rossman, Lusk, Perry** and McAllister, Justices.

---

\* Chief Justice when case was argued.
\*\* Chief Justice when this decision was rendered.

WARNER, J.

This is a suit brought by Jennie D. Keyes, as plaintiff-respondent, a resident of Oregon (hereinafter called the taxpayer), against the Tax Commission of the State of Oregon, the defendant-appellant (hereinafter called the Commission), for the refund of a portion of income taxes which she claims she was entitled to as a credit on her personal income tax returns for the years 1947, 1948, 1949 and 1950. These returns included the Canadian income received by the taxpayer in those years. She had previously paid under protest the amounts for which recovery is now sought. Her application to the Commission for the relief in the first instance was adversely determined. She thereafter filed a complaint in the circuit court pursuant to § 110-1629, OCLA (now ORS 315.665). From a decree of the circuit court in accordance with the taxpayer's contention, the Commission brings this appeal.

There is no dispute as to the facts. No question is raised as to the timeliness of the taxpayer's application for the relief sought. All the income with which we are concerned was derived as dividends from various Canadian corporations. It is admitted, too, that if the taxpayer is not entitled to a *credit* against her Oregon taxes under § 110-1605a, OCLA, she was entitled to apply the same amounts as *deductions* under § 110-1611 (1) (b), OCLA.

The amount of a tax of 15% for each year was deducted by the Canadian corporation from the face amount of the dividend distributed to the taxpayer and the tax retained remitted directly to the Canadian authorities. Thus, if the dividend was $1,000, $150 was subtracted and the taxpayer received the balance of $850. No deductions or exemptions were allowed to nonresident taxpayers before the 15% was withheld. In the same kind of transaction the resident stock-

holders were permitted to reduce the amount of their individual taxes by treating dividends as gross income, with credit for allowable exemptions and deductions, and computing their respective income taxes on the net figure. As an Oregon resident, she claims she was entitled to these credits under the provisions of the foregoing statute.

The overpayment of the Oregon income taxes which the taxpayer asked to have returned, as allowed by the circuit court, aggregates $9,344.42 for the tax years 1947-1950.

During 1947-1950, inclusive, the Oregon Personal Income Tax Law made provision for a tax credit to Oregon residents under certain conditions, stipulated in what was then codified as § 110-1605a, OCLA (Oregon Laws 1947, ch 353, p 537), and which we hereinafter call the tax credit statute. This is the section upon which the taxpayer relies to effect her recovery. It reads, in so far as pertinent to the matter:

█ With reference to taxes paid under this act for tax years (or periods) ending on or after June 30, 1941, *residents of this state* shall be allowed a credit against the taxes imposed by this act for *net income taxes* imposed by and paid to another state or country on income taxed under this act, subject to the following conditions:

"(a) *The credit* shall be allowed only for taxes paid to such other state or country on income derived from sources within such state or country which is taxed under the laws thereof *irrespective of the residence or domicile of the recipient.*" (Emphasis ours; the reasons for which will soon be evident.)

The income received from the Canadian sources was the amount derived there, less the Canadian taxes deducted at the source.

Inasmuch as the credit, if any, allowed by the tax credit statute depends upon the character of the tax collected under the law of the foreign state where paid, we must necessarily give attention to the Canadian tax laws prevailing during the 1947-1950 period.

We find that the Canadian income taxes paid by the taxpayer for the years 1947 and 1948 were paid under "The Income War Tax Act," as subsequently amended (Statutes of Canada 1917, ch 28, p 171), hereinafter called the Act of 1917. The Canadian taxes paid by her in 1949 and 1950 were under "The Income Tax Act" (Statutes of Canada 1948 (vol 1), ch 52, p 475), hereinafter called the Act of 1948, and which superseded the Act of 1917. Generalizing, these two Canadian income tax acts follow the same pattern as to nonresidents receiving dividends distributed in Canada. It is the particular provisions of these Canadian tax laws which are, in the last analysis, determinative of the plaintiff's right to a credit under the Oregon law.

The Commission tenders but one assignment of error: that during the years 1947-1950, inclusive, the Oregon tax credit statute allows credits only as to "net income taxes" paid to another state or country, when imposed under the laws thereof "irrespective of the residence or domicile of the recipient" of the income.

■■ Referring to tax exemption statutes generally, we have always applied a rule of strict construction. See *Methodist Book Concern v. State Tax Commission*, 186 Or 585, 592, 208 P2d 319 and cases there cited. Also see *Bigelow v. Reeves*, 285 Ky 831, 149 SW2d 499. A provision allowing a credit against a state tax is, in effect, an exemption from liability for a tax already determined and admittedly valid. It is, therefore, in

order to note before proceeding further that such credits, deductions or exemptions as the legislature may allow in the computation of an income tax are privileges accorded as a matter of legislative grace and not as a matter of taxpayer right. 85 CJS, 771-772, Taxation § 1099; *Palmer v. State Commission,* 156 Kan 690, 135 P2d 899; *Southern Weaving Co. v. Query,* 206 SC 307, 34 SE2d 51. By reason of their character as legislative grants, statutes relating to deductions allowable in computing income must be strictly construed against the taxpayer and in favor of the taxing authority. *Miller v. McColgan,* 17 Cal2d 432, 110 P2d 419, 424; *Bigelow v. Reeves,* supra; *Tupelo Garment Co. v. State Tax Commission,* 178 Miss 730; 173 S 656; *State ex rel. Whitlock v. State Board of Equalization,* 100 Mont 72, 45 P2d 684; *Cudahy v. Wisconsin Dept. of Taxation,* 26 Wis 126, 52 NW2d 467. The rule of strict construction to which we refer is equally applicable to tax credits. *Burroughs Adding Machine Co. v. Terwilliger* (CCA 6th) 135 F2d 608, 610; *Miller v. McColgan,* supra (at p 441). A "credit" to a tax has a far greater impact on the ultimate liability of the taxpayer than an allowable deduction and, therefore, is an item of greater importance as a subject for strict construction in favor of the government. Altman and Keesling, Allocation of Income in State Taxation (2d ed 1950) p 203. Also see 1 Mertens, Law of Federal Income Taxation, 69 § 3.08.

The foregoing rules are equally applicable to statutory provisions allowing credit for income taxes paid to another state or country. *Miller v. McColgan,* supra.

Our interest is first challenged by the phrase in the tax credit statute reading: "net income taxes imposed by and paid to another state or country." The difference between a tax measured by gross re-

ceipts and one determined on the basis of net income is one of impressive significance in this matter.

■ We hold, as contended by the Commission, that to constitute a "net income tax," the statutes imposing such a tax must grant certain deductions or exemptions from the taxpayer's gross income. Without "deductions" of a kind there cannot be a "net" income. *Hamilton National Bank v. District of Columbia*, 156 F2d 843, 844 (1946); *Kings County Trust Co. v. Law*, 194 NY Supp 370, 372; *Morley v. Remmel*, 215 Ark 434, 221 SW2d 51; *White v. Atkins* (CCA-1), 69 F2d 960, 962. Such conclusion is in harmony with the words "net income" as defined by § 110-1604, OCLA. "Net income" and "gross income," as employed in the foregoing phrases descriptive of taxes, comports with the familiar meanings assigned to them by those engaged in trade and commerce. What are permissible deductions in the determination of a "net income tax" may vary as between states and countries and vary from time to time within a given state or country. They cannot be reduced to an inflexible rule. At best we can only illustrate with items with which we are familiar, such as operating expenses, interest, taxes, losses, debts, depreciation and obsolescence.

The adoption of a firm definition for "net income taxes" is a matter of prime importance in the instant matter, because it becomes the measure whereby we will ultimately determine whether the applicable tax laws of Canada are, in fact, "net income tax laws," or "gross income tax laws," as to plaintiff, a non-resident of Canada.

The taxpayer does not too seriously contradict the definition of "net income taxes" here approved. The difference between the parties on that point is not

the accuracy of the Commission's definition as to what constitutes a "net income tax," but whether the tax paid under the Canadian acts harmonizes with that definition. Reduced to a question, the respective positions of the parties may be stated thus: were the taxes paid in Canada levied against the gross amount of income accruing to the taxpayer as dividends, or were the dividends to a nonresident stockholder what the taxpayer's brief describes as "net income to the recipient"?

If the Canadian tax is, in fact, a gross income tax, as claimed by the Commission, then the taxpayer cannot enjoy the benefits she presently seeks under the Oregon tax credit statute. But the Commission's objection to the taxpayer's claim has a double aspect. It not only contends that the taxpayer paid a gross income tax upon her dividends received in Canada, but also insists she was taxed under laws which were not common in application to residents and nonresidents alike. We will defer further reference to this later contention until after we dispose of the prime question as to the kind of tax which was charged against the plaintiff's dividends, except to observe that if the Commission can demonstrate that (1) it was not a net income tax or (2) that the law under which plaintiff paid her tax was not uniform in its application between residents and nonresidents of Canada, then, in either event, the judgment in favor of the plaintiff-respondent must be reversed.

We will now examine the Canadian statutes prevailing at the time the plaintiff's Canadian income taxes were paid.

The tax act of 1917, as originally enacted, did not tax Canadian dividends received by nonresident aliens such as plaintiff. Its impositions were then limited to

Canadian residents, sojourners and persons employed in Canada during the tax year and those who carried on a business there or derived income from services rendered there. In many ways, the original act was similar to our federal income act. Because of the specific reference made to section 4 of the original act by the amendments of 1932-33 and 1940-41, hereinafter referred to, we note that section 4 provided for the exemptions. For example, among others, a certain exempt amount for unmarried persons without dependent children, a minimum amount tax free for corporations, and amounts for taxes paid under certain previous tax acts. Any Oregon resident paying taxes under the Act of 1917, as originally adopted, would have been entitled to a credit under the Oregon tax credit statute.

The amendment of 1933 added a new section 9B, the pertinent part of which reads:

"(2) In addition to any other tax imposed by this Act an income tax of five per centum is hereby imposed on all persons who are *non-residents* of Canada in respect of

"(a) *All dividends received from Canadian debtors irrespective of the currency in which the payment is made,* and

\* \* \* \* \*

"(4) In the case of interest or dividends \* \* \* the taxes imposed by this section shall be collected by the debtor who shall withhold five per centum of the interest or dividend on the obligation and remit the same to the Receiver General of Canada.

"(5) The *exemptions provided* by section four of this Act *shall not apply in the case of the taxes imposed by this section* except those exemptions provided by paragraphs (a), (b), (c) and (k) of the said section four." [Note: The four exemptions permitted by this subsection do not affect

nonresident American aliens but only the Governor General of Canada, the income of officials of Great Britain, the income of counsels of foreign countries required to live in Canada and the income of incorporated companies whose business and assets are carried on and situate entirely outside of Canada.] (Emphasis ours.)

There were amendments to the Act of 1917, subsequent to 1933, one of which increased the nonresident tax from 5 to 15% (Statutes of Canada 1940-41, ch 18 § 16). All of Mrs. Keyes' taxes were at the 15% rate. Chapter 28, § 13, paragraph (4) (Statutes of Canada 1942-43), provides that taxes collected under section 9B, supra, be withheld at the source and remittance made directly to the government authorities. The same section, paragraph 5, made the following provision:

"(5) No exemptions, deductions or tax credits provided by any other section of this Act shall apply in the case of the taxes imposed by this section [9B] except those exemptions provided by paragraphs (a), (b), (c) and (k) of section four of this Act" [which are explained above].

The Act of 1948, although adopted in that year, was first applied to incomes received in 1949. Section 2 of Part I reads:

"2. (1) An income tax shall be paid as hereinafter required upon the taxable income for each taxation year of *every person resident in Canada* at any time in the year.

"(2) Where a person who is not taxable under subsection one for a taxation year

"(a) was employed in Canada at any time in the year, or

"(b) carried on business in Canada at any time in the year,

an income tax shall be paid as hereinafter required upon his taxable income earned in Canada for the year determined in accordance with Division D.

"(3) The taxable income of a taxpayer for a taxation year is his income for the year *minus the deductions* permitted by Division C." (Emphasis ours.)

There then follow the usual provisions of a general net income tax act, describing the amounts to be included in computing net income (section 6, et seq), deductions allowed in computing income (sections 11, 25 and 26), deductions not allowed in computing net income (section 12) and the usual procedural requirements.

Later we find sections 96 and 97 so segregated as to give special emphasis to the status of nonresident Taxpayers. They are headlined: "Part II—Tax on Income From Canada of Non-Resident Persons" and read:

"96. (1) Every *non-resident* person shall pay an income tax of 15% on every amount that a person resident in Canada pays or credits, or is deemed by Part I to pay or credit, to him as, on account or in lieu of payment of, or in satisfaction of,

"(a) a dividend other than

(i) a dividend in respect of shares in a non-resident-owned investment corporation [in certain circumstances]

\* \* \*

(ii) a dividend that would not be included in computing income under Part I by virtue of subsection (6) of section 61,

\* \* \* \* \*

"97. (1) The tax payable under section 96 is payable on the amounts described therein *without*

*any deduction from those amounts whatsoever."*
(Emphasis ours.)

Section 98 provides, as did the Act of 1917, that the Canadian corporation paying the dividends shall withhold the 15% tax and remit the same to the Canadian taxing authorities.

■ Summarizing the content of the Act of 1948, in so far as it touches the dividends received by the taxpayer in the instant matter in 1949 and 1950, we find it follows the same pattern laid down by the Act of 1917, i.e., the tax is levied at the source without any reduction of the gross amount received for the deductions, exemptions, credits, etc., accorded a resident taxpayer who receives dividends of like amount from the same Canadian corporation in the year.

The taxpayer seeks to circumvent the holding of the Commission by claiming that because the dividend was once a part of the "net income" of the Canadian corporation, it necessarily continues to maintain that "net" characteristic in her hands as a stockholder and, therefore, the Canadian taxes imposed upon her dividends are "net income taxes," and not "gross income taxes," as urged by the Commission. She attempts to support her position in three ways: (1) by a specious argument which would force the Commission to treat the stockholder and the corporation as one entity; (2) by recourse to certain California decisions which we will later discuss; and (3) by a claim that the construction applied by the Commission violates constitutional provisions mandating uniformity in tax legislation.

The taxpayer urges us to avoid "the legal fiction regarding corporate entities," i.e., by treating the stockholder and the corporation as one entity, in this

matter. She cites us to but one case: *Wood v. Deuser,* 349 Mo 1187, 164 SW2d 303. We are not unmindful that the rule of corporate entity is not absolutely sacrosanct and that there is an occasional necessity for penetrating the ostensible corporate character of an organization to fix responsibility upon stockholders as individual owners. But such an occasion is not here, and the Wood case does not present a situation comparable to what confronts us in the case at bar. The sole issue in the Wood case was, as stated by the court: "May plaintiff legally claim a tax credit for the year 1935 on dividends of a Missouri corporation (which paid its Missouri income tax on the earnings involved) paid to a foreign corporation whose only activity was the holding of the stock of the Missouri corporation, and which dividends in turn are payable to a trust estate holding the legal title to stock of said foreign corporation for the use and benefit of plaintiff, a Missouri resident?" (164 SW2d 303, supra)

The very laws of Canada under which the plaintiff-respondent's taxes were paid preclude the propriety of her construction of merger of corporate and stockholder entity and her proposition that the Canadian tax as to her, a nonresident stockholder, "is a tax imposed upon funds which were net income to the recipient."

To follow the respondent's suggestion of merger of entities, would compel us to close our eyes to the plain provisions of the Canadian Acts of 1917 and 1948, where these acts provide for and maintain the separation of the individual stockholder as an entity and apart from the corporation from whence his dividend is derived and where each of these entities is separately taxed under provisions different in rates and different

in deductions for corporations and individuals. See Sec 2 (d) and Sec 4 (1) of the Act of 1917 and Secs 25 to 29, inclusive, Secs 31, 32, 36 and 37 of the Act of 1948.

Moreover, it is this very statutory concept of separate entities with its different rates and methods for the computation of income tax for individuals and corporations under the Acts of 1917 and 1948 that give most persuasive support to the Commission's argument that the income tax levied against the dividends distributed to a nonresident is a gross income tax and not a net income tax, as asserted by the taxpayer in this matter.

"Gross income" as defined by Oregon law comprehends "dividends, including stock dividends." § 110-1603, OCLA (Its present counterpart is ORS 316.105.) Even if we were at liberty to adopt the Oregon definition of "gross income" in construing the Canadian Acts of 1917 and 1948, we would find it unnecessary, because both the Canadian acts furnish definitions of "income" which warrant the conclusion that dividends in the hands of the taxpayer are treated as "gross" income and not as "net" income as argued by the plaintiff taxpayer in this matter, and notwithstanding the absence of definitions for these terms. The conclusion is unavoidable that both Canadian Tax Acts and the Oregon Income Act are in harmony with respect to treating corporate dividends as "gross income" when received by the stockholder.

Turning to the Act of 1917, under which the Canadian government made its levies against plaintiff's Canadian dividends for the years 1947 and 1948, we find "income" is defined in Statutes of Canada 1917, ch 28, § 3, p 171 as including "dividends * * * from stocks, or any other investment." Although not par-

ticularly described by the phrase "gross income," the term "income" as there defined and afterwards used in each subsequent provision of the tax Act of 1917 obviously means "gross income" in the sense it represents the funds owned by the taxpayer before they are diminished by credits, deductions, expense allowances, etc., permitted by law, and which, when subtracted from the "income" or "gross income" received, leave a balance commonly called "net income," and the amount which when taxed produces a "net income tax." It is from the "income" as defined by section 3 of the Act of 1917 that all allowable exemptions and deductions are first made before the tax of a Canadian resident is finally calculated on the balance or "net income." (See sections 4 (1) and 5)

Although different wording is employed in the Act of 1948, the same result is achieved. Section 2 (3) of the Act of 1948 provides: "The taxable income of a taxpayer for a taxation year is his income for the year *minus the deductions permitted* by Division C." (Emphasis ours.) Section 6 of the Act of 1948 sets out the "Amounts Included in Computing Income" (headline to section 6, as published). Section 6 (a) provides for the inclusion of "amounts received in the year as * * * dividends." Sections 25 and 26 constitute that part of Division C which provide allowable exemptions and deductions from income as defined by section 6, and before the tax is computed on the balance, and in this respect is much like those of the Oregon Act. Thus, it is evident from the Canadian Acts that what is reserved by the corporation as undivided profits or made available for present distribution as dividends to its stockholders is, while in that aggregate form, "net income" to the corporation upon which it, as an entity, pays taxes (See section 2 (d) and sec-

tion 4 (2) of the Act of 1917 and sections 11 and 36 of the Act of 1948). But the same fund, when broken into component parts called dividends are, when distributed to its stockholders, "gross income" in their hands and a further part of their entire gross income to be ultimately reduced by allowable exemptions and deductions to a "net income" figure upon which is imposed a "net income tax" payable by them as individuals. Much of the error in the respondent's reasoning and we think in two of the California cases, infra, is due to the failure to recognize these translations of the aggregate of what is "net income" to the corporation into "gross income" of individuals when received by them as dividends.

The taxpayer places great dependence upon two California cases. These must necessarily be considered in connection with a third, *Miller v. McColgan,* supra, which preceded them. In the three cases, credit was claimed for taxes collected against resident Californians by foreign countries because of income said to have had its source in the countries imposing the tax. This trilogy of cases includes: *Miller v. McColgan,* supra, a decision by the Supreme Court relating to a credit for taxes paid by Miller in the Philippines; *Burgess v. State* (1945), 71 Cal App2d 412, 162 P2d 855; and *Henley v. Franchise Tax Board* (1954), 122 Cal App2d 1, 264 P2d 179. Both of the last two cases concern credits for payment of Canadian taxes, and are decisions of California's District Court, an intermediate appellate court of that state.

All three of the cases construe the same tax credit statute of that state, section 25 (a) of the California Personal Income Tax Act of 1935, reading:

"Whenever a resident taxpayer of this State has become liable to income tax to another State

or country upon *his net income,* or any part thereof, for the taxable year, *derived from sources without this State,* and subject to taxation under this act, the amount of income tax payable by him under this act shall be credited with the amount of income tax so paid by him to such other State or country, \* \* \*.'' (Emphasis ours.)

The Miller case, apparently relying on the authority of *First National Bank v. Maine* (1932), 284 US 312, 76 L ed 313, 52 S Ct 174, 77 ALR 1401, declared that the taxation of intangibles was subject to the rule of mobilia sequuntur personam, and, therefore, the stock in the Philippine corporation being then in California, it was held that the dividends from that corporation were income derived in the state of California and not ''from sources without the state.'' (Section 25 (a), California Personal Income Tax Act of 1935, supra) The clause quoted was a condition precedent to obtaining the credit claimed in California for the taxes which a foreign state or country had previously levied against the same item of income. As a holding applying the rule of mobilia sequuntur personam, the Miller case has no value here. Our interest in it is derived from the taxpayer's repeated assertions that the Miller case was overruled by the Henley case and her reliance upon a note found at page 655 of ALR2d Supplement Service to vols 1-50 ALR2d where will be found a statement implying that by reason of the Henley decision *Miller v. McColgan,* supra, is no longer the law in California. The taxpayer would have us believe that Henley is now controlling, but we are not so impressed.

Henley rests upon the sole authority of the Burgess case, supra (264 P2d 179) for its construction of the Canadian tax statute (Act of 1917). In Burgess the

plaintiff was seeking a credit in the amount of Canadian income taxes levied against plaintiff's interests in two Canadian trusts. Burgess made no reference to *Miller v. McColgan,* supra, nor to the tax doctrines there followed, but treated the beneficiaries' shares in the Canadian trusts as "income derived from sources in Canada." (162 P2d 856)

The Henley case, however, sought to establish a credit arising out of *corporate dividends* taxed in Canada, as the taxpayer here attempts to do. Under the rule of the Miller case, the application for credit would have been denied on the ground that the source of the income was within the state of California. The mobilia sequuntur personam rule is, however, involved in the Henley case by the conclusion of the district court that the Miller case was based upon *First National Bank of Boston v. Maine,* supra, which federal holding was specifically overruled in 1942 by *State Tax Commission of Utah v. Aldrich,* 316 U. S. 174, 180, 86 L ed 1358, 62 S Ct 1008. For that reason, it was assumed in Henley that *Miller v. McColgan,* supra, fell with the case of the *First National Bank of Boston v. Maine,* supra. The district court, therefore, suggested that *"Miller v. McColgan* is not the law today." (264 P2d 179, 181) With the Miller case thus disposed of, the court then proceeded to consider the Canadian act as the same was construed in Burgess relative to the tax against the *trust* shares even though the taxes in Henley were imposed against corporate dividends and not trust shares.

The fundamental error in the Burgess case, repeated in Henley, is the same error the respondent taxpayer presses upon us here, that is: she asks us to assume that because dividends reserved for distribution by a corporation are "net income" while the fund

is still in the control of the corporation, they are ipso facto "net income" for tax purposes when received by individual stockholders. As we have earlier indicated, such a conclusion is not borne out by a careful reading of the Canadian tax acts. Even if we assume Burgess correctly construed the Canadian act as to shares of income from trusts, there can be no doubt that the pattern approved in the Burgess case as to beneficial shares in trust income cannot be successfully applied in the Henley case, as between the two clearly separate entities: a corporation on one hand and a stockholder on the other.

We also note that the facts in the Henley and Burgess cases disclose that all Canadian taxes paid were under the Act of 1917 and prior to its amendment in 1942, which added subsection 5 to section 9B, previously referred to. This was a substantial change of distinguishing importance so far as nonresident Canadian taxpayers were concerned. The California cases, i.e., Burgess and Henley, are only interested in taxes imposed under the Act of 1917 and have no reference to the Act of 1948, under which Mrs. Keyes, the taxpayer here, was taxed in 1949 and 1950. We observe, too, that in the Burgess case the conclusion of the California court in contruing the operation of the Canadian law is predicated solely upon its own reasoning without aid of or reference to any Canadian decision; indeed, without reference to any judicial opinion of any jurisdiction, including California. For definitions of "net income" and "gross income," the Burgess case refers to the California statutory definitions. (162 P2d 855, 856) The district court gives much weight to a stipulation of the facts which are only summarily presented in the opinion. To what extent these facts are entitled to the judicial respect accorded them, we

cannot say without a fuller knowledge of the substance of the stipulation.

Since the decision in the Henley case in 1954, considerable doubt has been raised in certain official quarters of California concerning the validity of the holding in the Henley case to the effect that the Miller decision was no longer the law. On the advice of the attorney general, the Franchise Tax Board of that state is following Miller as controlling authority and not the Henley decision (See P-H State and Local Tax Service, California, p 58, 137). Also see Appeal of Scanlon (April 20, 1955) before California State Board of Equalization (CCH: 2 Cal Tax Rep, § 200-341). It was an appeal from action of California Franchise Tax Board denying claim of Scanlon for refunds on account of taxes paid in Canada on dividends from Canadian corporations. Petitioner's claim in the Scanlon matter was denied on authority of *Miller v. McColgan,* supra, and with a statement implying the Miller case was untouched by the holding in *State Tax Commission of Utah v. Aldrich,* supra, because "no federal question was involved."

While we appreciate that the opinions of the attorney general and of the Board of Equalization are not controlling, they, nevertheless, cast a cloud on the plaintiff-respondent's claims for the final and persuasive character of Henley in that state. We submit that if the California Supreme Court continues to cling to the tax formula followed in Miller, then nothing said in any of the California cases can be of any value to respondent here.

Our own conclusion as to the validity of the Commission's construction of the Canadian tax acts gathers additional support from the Commission's regula-

tion which is interpretive of § 110-1605a, OCLA, the Oregon tax credit law.

██ We take judicial knowledge of administrative interpretation of tax statutes by the Tax Commission. Although such rules promulgated by the Tax Commission or other state administrative agency are not controlling, their contemporaneous construction of an act is, nevertheless, highly persuasive, especially where such rules have been in effect for a long term of time as a basis for determining technical and involved matters such as here presented. *Broadway-Madison Corporation v. Fisher,* 164 Or 401, 408; 102 P2d 194; *Ollilo v. Clatskanie P. U. D.,* 170 Or 173, 181, 132 P2d 416; *Allen v. Multnomah County,* 179 Or 548, 564, 173 P2d 475.

We, therefore, give weight to the following regulation of the Oregon Tax Commission which has been in effect since 1941, the year of the adoption of the tax credit statute (§ 110-1605a, OCLA, supra). It has since been the Commission's guide in the administration of that act.

"Art. 605a-1-a. *Credit for Income Taxes Paid Another State or Country.* (1) Subject to the limitations described in article 605a-1-a respecting residents, and in article 605a-2 respecting nonresidents, resident taxpayers are allowed a credit against taxes due under the law for *net income* taxes paid another state or country, and nonresidents are allowed a credit against taxes due under the law for net income taxes paid the state or country in which they reside. * * * *Since credit may be allowed only for net income taxes,* no credit may be allowed for taxes imposed on gross receipts, gross income, dividends, etc., which must be paid regardless of whether or not the subject of the tax constitutes net income, even though in particular

instances the subject taxed is net income in whole or in part.'' (Emphasis ours.)

We hold that the tax imposed by the Canadian law upon the dividends received by Mrs. Keyes, the plaintiff-respondent, was a gross income tax.

■ We are in accord with the taxpayer's representation that the state statute is intended ''to prevent or alleviate double taxation.'' All authorities counsel avoidance of double taxation whenever practicable, but they are agreed that double taxation as such is not prohibited by either the state or the federal Constitution. *Standard Lumber Co. v. Pierce,* 112 Or 314, 339, 228 P 812; *Baker v. Druesedow,* 263 US 137, 68 L ed 212, 44 S Ct 40; *Illinois Central Railroad Co. v. Minnesota,* 309 US 157, 84 L ed 670, 676, 60 S Ct 419. It is only when discrimination or want of uniformity results, as a consequence of double taxation, that the law is invalid because being so it contravenes some constitutional guaranty. *Kidd v. Alabama,* 188 US 730, 47 L ed 669, 673.

■ The fact that the Oregon statute allows a tax credit for net income tax payments made outside of the state (§ 110-1605a, OCLA) and only a deduction for gross income tax payments made in other jurisdictions (§ 110-1611 (1) (b), OCLA) may seem harsh to respondent and others similarly situated, but it does not warrant the court giving the tax credit statute a judicial amendment in order to avoid what such taxpayers believe to be economically unwise or inequitable results.

11, 12. The province of the courts is to declare what the legislature has done, not what it should have done, and no such construction as proposed by the respondent will be judicially applied unless the statute ''is rea-

sonably susceptible of two constructions, one of which is absurd and unreasonable and the other reasonable and wholesome." *Fullerton v. Lamm,* 177 Or 655, 671, 163 P2d 941, 165 P2d 63; *State v. Hay,* 132 Or 223, 227, 283 P2d 753; *State v. Gates,* 104 Or 112, 123, 206 P 863. We find that the tax credit statute before us is not reasonably susceptible to two different constructions.

The taxpayer argues that the interpretation of § 110-1605a, OCLA, made by the Commission, violates the uniformity provisions of the state Constitution, citing Art I, § 32 and Art IX, § 1. These articles lay out the essentials for a constitutional tax with emphasis on "uniformity on the same class of subjects." Respondent does not deny the power of the legislature to tax under the classifications made by the Oregon act. She further agrees that there is nothing in the state Constitution to prohiibt making reasonable and natural classifications for the purpose of taxation, but, on the other hand, contends that proper classification requires the allowance of credit to all Oregon residents on all types of income taxes paid to all foreign jurisdictions whether of a discriminatory character or not.

The classification established by the legislature in § 110-1605a, OCLA, includes only those residents of Oregon who pay *net* income taxes to foreign states on income also taxed in Oregon, provided the tax imposed by the foreign jurisdiction is assessed by it without discrimination as to type and rate between the residents and nonresidents of the foreign state.

The power of the state to make reasonable and natural classifications is clear and beyond question. 51 Am Jur 230, Taxation § 173; 1 Cooley, Taxation (4th ed) 705, § 332; *Methodist Book Concern v. State Tax Commission,* supra.

In the Methodist Book Concern case, at p 594, we quoted with approval from *Quaker City Cab Co. v. Pennsylvania*, 277 US 389, 72 L ed 927, and here repeated as far as pertinent:

"No question is or could be made  *  *  *  as to the right of a State  *  *  *  to enact laws or ordinances, based on reasonable classification of the objects of the legislation or of the persons whom it affects. 'Equal protection' does not prohibit this. Although the wide discretion as to classification retained by a legislature, often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification.  *  *  *."

■ Absolute or perfect equality and uniformity in taxation, being impossible of attainment, is not required, and as long as there is substantial uniformity in the application of taxing statutes, the constitutional provisions relating to equality and uniformity are not violated. 84 CJS 82, Taxation § 23b; *Yamhill County v. Foster*, 53 Or 124, 129, 99 P 286.

We find no merit in the taxpayer's argument that the tax credit statute is unconstitutional.

■ But even if we assume that the respondent paid a net income tax in Canada as she contends, she is still confronted with the problem of meeting the second condition to the extension of the credit claimed, i.e., the tax imposed under the foreign law must be made "irrespective of the residence or domicile of the recipient." (§ 110-1605a (1) (a), OCLA, supra) This is a condition she cannot meet.

It is respondent's contention that these last-quoted words should be interpreted to mean that the credit should be allowed for taxes paid to the foreign country or state on income derived from within that state or

country whether said recipient is a resident or not in the country which is the source of the income, or, as respondent illustrates her contention: "In other words, Respondent, who was the recipient here, would have had to pay the tax whether she was a Canadian resident or an Oregon resident."

This is a tortured construction of these words, submitted without citation to authority, which neither conforms to the purpose of the Oregon statute nor the pattern of the Canadian acts as to nonresidents. If the Canadian acts levied a tax alike as to residents and nonresidents, then there might be some substance to the argument. The phrase used and which respondent misconstrues, might well be said to have been so written in the hope to induce foreign countries to levy income taxes without discrimination in favor of their own people and against investors from our country.

Reversed.