Helen PATE; William Whitfield Pate;
Julia Ruth Pate; Kirksey McCord
Pate, Plaintiffs–Appellants,

v.

UNITED STATES of America, DEPART-
MENT OF THE TREASURY INTER-
NAL REVENUE SERVICE, Defendant–
Appellee.

No. 90–7095.

United States Court of Appeals,
Tenth Circuit.

Nov. 20, 1991.

G. Michael Blessington, Oklahoma City, Okl., for plaintiffs-appellants.

Shirley D. Peterson, Asst. Atty. Gen., Gary R. Allen, William S. Estabrook and Jordan L. Glickstein, Attys., Tax Div., Dept. of Justice, Washington, D.C., for defendant-appellee.

Before LOGAN, MOORE and BALDOCK, Circuit Judges.

LOGAN, Circuit Judge.

Plaintiffs, the wife and children of Whit Pate, appeal from an adverse judgment entered by the district court on cross-motions for summary judgment in this quiet title action. The gravamen of the action concerns the validity of certain tax liens asserted against plaintiffs' property, which derive exclusively from the admitted tax liability of Whit Pate.[1]

The stipulated facts underlying the district court's decision, which are set forth in some detail in its Findings of Fact and Conclusions of Law filed November 26, 1990 (Findings and Conclusions), need only be briefly summarized for purposes of our analysis. Whit Pate purchased a family residence in 1975, which was titled, and mortgaged, solely in the name of his wife, plaintiff Helen Pate. In the succeeding years, Whit Pate, who earned the couple's

---

1. After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R.App.P. 34(a); 10th Cir.R. 34.1.9. The case is therefore ordered submitted without oral argument.

only income, provided his wife the funds necessary to maintain and remodel their home and to pay off the original mortgage.[2] In 1984, Helen Pate deeded the property jointly to the couple's children, retaining a life estate for herself. At present, the government has several liens noticed against the property arising from Whit Pate's conceded tax liabilities for the years 1983 through 1987.

The district court granted summary judgment for the government, holding that plaintiffs' property was subject to the liens arising from Whit Pate's tax liabilities, on the basis of the following two-stage analysis:

First, as to the 1975 acquisition in the name of Helen Pate, the district court concluded that Whit Pate retained an encumberable beneficial interest in the property through the legal mechanism of a purchase money resulting trust on the basis of the following reasoning:

> "It is undisputed that the money to purchase the house and lot in 1975 came from Whit Pate, who has continually resided on and enjoyed the benefits of the property. The primary factual issue to be established in declaring a resulting trust is the payment of the consideration for the property, title to which has been taken in another. Such is the situation here."

Findings and Conclusions at 9 (citations omitted).

Second, the district court held that the 1984 conveyance to the children constituted a fraudulent transfer of Whit Pate's beneficial interest under Okla.Stat. tit. 24, § 116, and therefore, raised no impediment to attachment of the tax liens because

> "[a]t the time of the [1984] transfer, Whit Pate had already been assessed four federal tax liens. He thus reasonably believed he would incur debts beyond his ability to pay as they became due. See § 116(A)(2)(b). The court thus finds that the transfer was made with

actual intent to hinder, delay or defraud a creditor. See § 116(B)(2), 10."

Findings and Conclusions at 10.

We review the district court's summary judgment rulings de novo, applying the same legal standard used by the district court under Fed.R.Civ.P. 56(c). *Abercrombie v. City of Catoosa*, 896 F.2d 1228, 1230 (10th Cir.1990). "Summary judgment should be granted only if 'there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law.' " *Id.* (quoting Rule 56(c)). In the instant case, we must determine whether the district court properly applied the applicable law to the undisputed facts.

We begin our analysis, as the district court did, with the recognition that a tax lien can attach only to a property interest owned by the delinquent taxpayer and that the existence and extent of such an interest is governed by state law. *See, e.g., United States v. Rodgers*, 461 U.S. 677, 683, 690–91, 103 S.Ct. 2132, 2137, 2140–42, 76 L.Ed.2d 236 (1983); *Bigheart Pipeline Corp. v. United States*, 835 F.2d 766, 767–68 (10th Cir.1987). With this in mind, our threshold inquiry concerns the proper treatment of the 1975 acquisition under Oklahoma law, because if Whit Pate obtained no interest in the property at that time the character of Helen Pate's subsequent conveyance[3] to the couple's children is irrelevant to the viability of the tax liens asserted exclusively through Whit Pate.

The district court found that a resulting trust arose in favor of Whit Pate primarily because he bought the property for his wife. The district court expressly relied on *Copenhaver v. Copenhaver*, 317 P.2d 756, 760 (Okla.1957), for the general presumption in favor of a resulting trust when title to real property is taken in one person's name but the purchase price is paid by another. *See Oklahoma City v. Vahlberg*, 197 Okl. 613, 173 P.2d 736 (1946). However, there is a well-established exception to this general rule which

---

**2.** Additional mortgages, taken out over the years by Helen Pate to secure loans for her husband, were also satisfied with funds from Whit Pate.

**3.** The nature and effect of Whit Pate's limited participation in this conveyance is discussed infra.

is triggered by the very circumstances in the instant case. When a husband purchases property for his wife, not only is the resulting trust presumption inapplicable, but the wife is entitled to the opposing presumption that the property is hers alone by way of a gift or advancement. *See Chastain v. Posey*, 665 P.2d 1179, 1182–83 (Okla.1983); *Fletcher v. Fletcher*, 244 P.2d 827, 830 (Okla.1952); *King v. Courtney*, 190 Okl. 256, 122 P.2d 1014, 1015 (1941). Accordingly, the district court's disposition cannot be supported on its stated rationale.

Indeed, absent some other basis for ascribing a cognizable property interest to Whit Pate, plaintiffs are entitled to summary judgment quieting their title to the property free and clear of the subject tax liens. The presumption against a resulting trust arising out of the 1975 acquisition controls unless rebutted by clear and convincing evidence, *see Fletcher*, 244 P.2d at 830; *King*, 122 P.2d at 1015; *see generally Cacy v. Cacy*, 619 P.2d 200, 202 (Okla.1980) (evidence of resulting trust "must be clear, unequivocal, and decisive beyond a reasonable doubt"), and such evidence is lacking in the stipulated record here. None of the factual circumstances regarding Whit Pate's continued rent-free residence in the family home and payment of upkeep and remodeling expenses are inconsistent with his wife's ownership of the property. Nor does the fact that Helen Pate mortgaged the home to secure loans her husband advised were necessary, and that he repaid, in any way undercut her ownership status. Moreover, Whit Pate's participation in the 1984 warranty deed to the children was appropriately limited to his *legally required* acquiescence in the conveyance of his wife's title to the family homestead. *See Grenard v. McMahan*, 441 P.2d 950, 951 (Okla.1968) (citing both state constitutional and statutory provisions requiring spousal consent to transactions involving homestead exemption). Finally, we note that the 1975 acquisition of the property was not tainted by any existing and accruing tax liabilities, which did not arise until years later.

■ The government appears to advance an alternative rationale to the district court's resulting trust analysis, as follows: (1) Oklahoma law provides for a "homestead exemption," i.e., a reciprocal prudential restriction on the transfer or encumbrance of the family residence which vests automatically for the protection of both husband and wife independently of any considerations of title or ownership;[4] (2) Whit Pate resided with his wife on the property since its purchase and therefore was vested with this homestead interest for the period in question;[5] (3) this court and others have held that tax liens may attach to a delinquent taxpayer's interest in the family residence despite the protections awarded the nondelinquent spouse by homestead exemptions of the sort recognized in Oklahoma;[6] and (4) "[t]hus, Whit Pate clearly had an interest in the homestead property at issue to which the IRS liens that were filed against him could attach." Brief for the Appellee at 20–23. There is a fatal flaw in this argument, however, arising from a fundamental misconception regarding the nature of the homestead exemption.

Depending on the controlling state law definition or characterization, a homestead exemption may create a bona fide property interest or merely afford a personal right to preclude the alienation or encumbrance of such interests. *See generally United States v. Morgan*, 554 F.Supp. 582, 587–88 (D.Colo.1982) (contrasting Kansas homestead exemption, which the state's courts have expressly construed to confer an estate in land, with Colorado exemption, which has been construed as only a personal exemption creating no interest in land). In Oklahoma " '[t]he homestead right is not

---

**4.** *See, e.g., In re Estate of Wallace*, 648 P.2d 828, 831–32 (Okla.1982); *Keel v. Jones*, 413 P.2d 549, 551 (Okla.1966).

**5.** *See, e.g., Keel*, 413 P.2d at 550–51; *Mercer v. McKeel*, 188 Okl. 280, 108 P.2d 138, 141 (1940).

**6.** *See Tillery v. Parks*, 630 F.2d 775, 777–78 (10th Cir.1980); *see also, e.g., United States v. Rodgers*, 461 U.S. at 700–02, 103 S.Ct. at 2146–47; *United States v. Heasley*, 283 F.2d 422, 427 (8th Cir. 1960).

an estate in land, but a mere privilege of exemption from execution of such estate as the holder has.'" *Evans v. Evans*, 301 P.2d 232, 234 (Okla.1956) (quoting *Mercer v. McKeel*, 108 P.2d at 141). Thus, it was held in *Evans* that a wife's homestead right, which had undeniably afforded her its protection while she resided in the family home, did not create any inheritable estate in that property, which had been titled solely in her husband's name, after she predeceased her husband. *See id.; see also In re Estate of Wallace*, 648 P.2d at 831–32 (comparing homestead exemption, which is a personal right intended only to protect the family from creditors, with the probate homestead, which gives surviving family members a lifetime possessory interest superior to property interests of coheirs).

Under these Oklahoma cases, the right to assert a homestead exemption is not, in and of itself, a substantive property interest to which the government's tax liens could attach. The government has not cited a single case that reaches a contrary conclusion. The Oklahoma cases it cites are in accord with those discussed immediately above. The federal cases it relies upon hold only that a homestead right does not preclude attachment of a tax lien to an otherwise established interest in homestead property—they do not suggest that the homestead right itself (here, of the delinquent taxpayer) could serve as the property interest required to anchor the government's lien. Indeed, to permit encumbrance of a family residence with the liabilities of a nonowning spouse solely on the basis of his homestead right would be to transform what was intended as a shield for the protection of the family into a sword enabling creditors to inflict the very sort of domestic harm the exemption was meant to palliate. *See In re Estate of Wallace*, 648 P.2d at 831–32 ("[t]he spirit and purpose of the constitutional homestead exemption is to protect the entire family in its occupancy from improvidence and the urgent demands of creditors"). Absent some clear direction to this effect from the Oklahoma courts we will not construe the homestead exemption in such a self-defeating fashion. *See gen-*

*erally First Nat'l Bank of Sentinel v. Anderson*, 240 P.2d 1066, 1068 (Okla.1952) (Oklahoma Supreme Court repeatedly has held that constitutional and statutory provisions relating to homestead exemption are to be liberally construed in interests of family home).

The government also cites federal cases recognizing its general authority to enforce tax liabilities against the property of third parties who serve merely as the delinquent taxpayer's nominees, alter egos, fraudulent transferees, and the like. It is not clear whether this broad, heterogeneous body of caselaw, discussed in the opening section of the government's argument, is intended to introduce and frame the more specific issues regarding Whit Pate's alleged property interests under the particular theories we have already reviewed or to provide a separate basis for attributing ownership of the property to him. Should the latter be the case, the factual circumstances already deemed inadequate to substantiate a resulting trust in favor of Whit Pate are also insufficient to satisfy the government's burden of establishing his ownership of the property under the various theories represented in the authorities cited. *See generally Security Counselors, Inc. v. United States*, 860 F.2d 867, 869 (8th Cir.1988) (government bears burden of establishing taxpayer's interest in escrow funds held by third party); *Arth v. United States*, 735 F.2d 1190, 1191 (9th Cir.1984) (government bears burden of establishing taxpayer's interest in bank account assigned to third party); *Valley Finance, Inc. v. United States*, 629 F.2d 162, 171 n. 19 (D.C.Cir. 1980) (government bears burden of establishing taxpayer's interest in property held by alleged alter ego), *cert. denied*, 451 U.S. 1018, 101 S.Ct. 3007, 69 L.Ed.2d 389 (1981).

For the reasons discussed above, we hold that Whit Pate never had an interest in plaintiffs' property sufficient to enable attachment of the government's liens. Therefore, the 1984 transaction between Helen Pate and the other plaintiffs is of no consequence to the rights of the parties, and plaintiffs are entitled to summary judgment in their favor.

The judgment of the United States District Court for the Eastern District of Oklahoma is REVERSED, and the cause is REMANDED with directions to enter judgment for plaintiffs.