## IN THE OREGON TAX COURT

## CENTRAL ELECTRIC COOPERATIVE, INC.
*v.*
## DEPARTMENT OF REVENUE
(TC 3273)

R. L. Marceau, Bend, represented plaintiff.

Ted E. Barbera, Assistant Attorney General, Department of Justice, Salem, represented defendant.

Decision rendered for defendant April 9, 1993.

### CARL N. BYERS, Judge.

The pleadings allege that the facts are correctly set out in defendant's Opinion and Order No. 89-1269. The parties have submitted the legal issues on briefs and oral arguments.

Petitioner is a not-for-profit rural electric cooperative association providing electrical utility service to customers in central Oregon. In lieu of an ad valorem tax on its transmission and distribution lines, plaintiff is subject to a tax on its gross revenue derived from the use of those lines. ORS 308.807(3) imposes the tax on:

"[A]ll gross revenue derived from the use or operation of transmission and distribution lines * * * minus the cost of power to the association, multiplied by four percent."

This case raises the question of what constitutes "cost of power."

In the mid-1970's, plaintiff, along with numerous other electrical cooperatives, agreed to participate in the construction of WPPSS nuclear power plants Nos. 4 and 5.[1] The plants were not completed and the proposed project was terminated in 1982. Concerned that plaintiff might be held financially liable under the terms of its participation agreement, plaintiff's board of directors adopted a resolution increasing its rates to create a contingency fund for any liability that might be adjudicated. Although plaintiff and the other participants were eventually released from the participation agreements,[2] they were named as defendants in a number of lawsuits filed by bondholders. Those suits claimed violations of securities laws in connection with the sale of the WPPSS bonds. In 1988, the parties agreed to settle those lawsuits. Plaintiff's share of the settlement obligations was $2,250,000. Believing this payment represented a cost to secure a future power source, plaintiff deducted it as a "cost of power" on its 1988 gross revenue return.

## ISSUE

Did the $2,250,000 paid by plaintiff qualify as a "cost of power to the association" for purposes of ORS 308.807(3)?

## DISCUSSION

The legislature amended the statute to help cooperatives because the cost of the power to the cooperatives had been increasing. However, the legislature did not intend to allow every expense associated with obtaining power as a deduction. If a cooperative's only business is buying power and distributing power to its customers, many if not most of its expenses could be classified as associated with obtaining power. Even plaintiff doesn't claim this for the statute. Plaintiff does claim that except for the participation agreements, it

---

[1] The participation agreements did not give plaintiff an ownership interest in the plants but simply assured plaintiff of the right to obtain power, if any was ever produced, in exchange for plaintiff's assurance that it would pay its proportionate share of the cost of construction, operation and maintenance of the plants. *DeFazio v. WPPSS*, 296 Or 550, 558, 679 P2d 1316 (1984).

[2] *Chemical Bank v. WPPSS*, 102 Wash 2d 874, 691 P2d 524 (1984).

would not have been required to make the settlement payment. Plaintiff reasons that since the participation agreement was to obtain power, that purpose brings the settlement expense within the ambit of the statute.

■ The court does not agree. The plaintiffs in those suits were not seeking to enforce the participation agreements. The payment was made in settlement of lawsuits alleging violations of securities laws. Although the liability arose out of circumstances involving plaintiff's agreement to participate in the WPPSS project, the liability was not based on the agreements. Deductions, like exemptions, are strictly construed. *Keyes v. Chambers*, 209 Or 640, 307 P2d 498 (1957). Plaintiff must clearly bring itself within the statute. As defendant points out, the words "cost of power" do not include the cost of settling securities litigation, tort claims or other expenses that may be associated with the process of obtaining power. The statute does not say the "cost of *obtaining* power" but simply the "cost of power."

Plaintiff admits it acquired no power for the amount it paid. However, plaintiff relies on accounting rule FAS 90, which provides guidance for among other things, the capitalizing of costs and the classification of costs on the income statement. However, accounting rules for distinguishing between capital and expenses do not control the meaning of the statute.

Plaintiff argues that by anticipating the liability, it imposed higher rates than necessary to accumulate the fund. If it is not allowed to deduct the settlement payment as a cost of power, the higher taxes it paid during the accumulation years overvalue the transmission lines. However, the same could be said if plaintiff accumulated a fund over a period of years to provide for unfunded pensions or to settle a tort liability.

■ If the payment was not for "the cost of power," the legislature did not intend it to be deducted. Here, the cost of settling the litigation for securities violations has no relationship to the cost of power plaintiff sold to its customers.

The court finds that defendant's Opinion and Order No. 89-1269 must be sustained. Defendant to recover its costs and disbursements.