1998 OK 13

**TPQ INVESTMENT CORPORATION, and Subsidiary, Appellant,**

v.

**STATE of Oklahoma, ex rel., OKLAHOMA TAX COMMISSION, Appellee.**

No. 85150.

Supreme Court of Oklahoma.

Feb. 10, 1998.

Ted M Riseling, Riseling & Associates, Tulsa, for Appellant.

Marjorie Welch, Acting General Counsel, Robert B. Struble, Deputy General Counsel, Oklahoma Tax Commission, Oklahoma City, for Appellee.

**ALMA WILSON, Justice:**

¶ 1 The issue in this appeal is whether the Oklahoma Tax Commission correctly determined that the appellant, TPQ Investments Corporation (TPQ) and its wholly owned subsidiary, Pro–Quip Corporation (Pro–Quip) are not entitled to the investment/jobs credit allowed by § 2357.4 of title 68 for the tax year 1986.[1] The Court of Civil Appeals reversed and remanded. We have previously granted certiorari, and affirm the order of the Oklahoma Tax Commission.

¶ 2 The taxpayer in this case is a holding company, TPQ, which was formed by a corporate management group for the purpose of acquiring all of the stock of a corporation, Pro–Quip. The latter is an engineering and fabrication company that designs and manufactures process systems used in the chemical, petrochemical, refinery and natural gas processing industries. The stock acquisition was structured to satisfy certain requirements of the Internal Revenue Code of 1986, § 338.[2]

¶ 3 In the year to which this taxation controversy relates, 1986, TPQ applied to the Commission for an Oklahoma income tax investment credit under § 2357.4 of title 68.[3] That section provided a credit "for investment in qualified depreciable property placed in service ... which directly results in a net increase in the number of full-time equivalent

1. 1985 Okla.Sess.Laws, ch. 342, § 1, effective Jan. 1, 1986, and codified at 68 O.S.Supp.1985, § 2357.4.

2. 33 Am.Jur.2d *Federal Taxation* ¶ 5100 (1996) comments on § 338: "A corporation (purchasing corporation) that makes a qualified stock purchase of the stock of another corporation (target) may be able to make an election (Code Sec. 338 election) to get a new basis for the target's assets. If the election is made, the purchasing corporation is treated as having purchased the target's assets on the day after the acquisition date, for an amount determined by reference to its basis in its target stock. The target is also treated as having sold its assets on the acquisition date for their fair market value."

3. 1985 Okla.Sess.Laws, ch. 342, § 1, effective Jan. 1, 1986. Subsection A provided in pertinent part: "For taxable years beginning after December 31, 1980, and ending before January 1, 1992, there shall be allowed a credit against the tax imposed by Section 2355 of this title for invest-

ment in qualified depreciable property placed in service during those years which directly results in a net increase in the number of full-time-equivalent employees engaged in manufacturing or processing in this state including employees engaged in support services, provided that no credit shall be allowed pursuant to the provisions of this section for property which is exempt by law from ad valorem taxation."

Section 2357.4 was also amended in 1987, 1988, 1991, 1992 and 1997. The last amendment 1997 Okla.Sess.Laws, ch. 190, § 3 provides in pertinent part: "there shall be allowed a credit against the tax imposed by Section 2355 of this title for investment in qualified depreciable property placed in service during those years for use in a manufacturing or processing facility or a qualified aircraft maintenance or manufacturing facility as defined in paragraph 14 of Section 1357 of this title in this state or for a net increase in the number of full-time-equivalent employees engaged in manufacturing, processing or aircraft maintenance in this state including employees engaged in support services."

employees engaged in manufacturing or processing in this state including employees engaged in support services...." "Qualified property" refers to "machinery, fixtures, equipment, building, or substantial improvements thereto, placed in service in this state during the taxable year."[4] The term "new employees" includes "those employees who constitute a net increase in total employment as compared with employment levels prior to the investment in qualified property and whose employment is directly attributable to such investment."[5]

¶ 4   The taxpayer filed consolidated corporate income tax returns in Oklahoma and paid the taxes due for the taxable years ending in 1987, 1988, and 1989. The taxpayer later filed an amended tax return, requesting refunds in the amount of the investment credit to which it was entitled pursuant to § 2357.4.[6] The taxpayer sought the credit (or refund) because when it acquired Pro–Quip, it also acquired "the 106 full-time-equivalent employees who were employed by Pro–Quip at the time of the acquisition...." The Tax Commission's staff disallowed the credit, concluding that Pro–Quip had no "new employees" during the 1986 tax year. The taxpayer then filed a protest.

¶ 5   The administrative law judge concluded that for state law purposes Pro–Quip is generally treated as a continuing corporation and the same employer. Therefore TPQ's investment did not result in a net increase in the number of full-time-equivalent employees. The Tax Commission adopted the ALJ's findings, and the taxpayer appealed.

¶ 6   TPQ argues that because it made an election under § 338 of the Internal Revenue Code, its investment in Pro–Quip must be treated as an asset purchase or reinvestment. According to TPQ, the Tax Commission should have compared TPQ's rather than Pro–Quip's employment levels prior to the investment and the employment levels after the investment. TPQ additionally asserts that the statute is vague and thus must be

construed in favor of the taxpayer, citing *National Bank of Tulsa v. OTC*, 1963 OK 38, 380 P.2d 542, 545.

¶ 7   The Tax Commission does not contest that the stock purchase was an investment. The Commission answers that taxpayer did not meet the requirement that the investment must directly result in a net increase in the number of full-time-equivalent employees. The Tax Commission argues that the only difference between the old Pro–Quip and the new Pro–Quip is different owners, and that the enactment of § 338 of the Internal Revenue Code does not require that the State of Oklahoma pretend that new assets were placed in service in this state when in fact they were not. The Tax Commission draws this Court's attention to the uncontested fact that there were no increases in employment levels at Pro–Quip and argues that there is no justification for a "deemed increase."

■   ¶ 8   Tax exemption, deductions and credits depend entirely on legislative grace and are strictly construed against the exemption, deduction or credit. *Essley v. Oklahoma Tax Commission*, 196 Okla. 473, 168 P.2d 111, 113 (1946), *Keyes v. Chambers*, 209 Or. 640, 307 P.2d 498, 501 (1957). The statutes' operation will not be extended by construction. *Omaha Public Power District v. Nebraska Department of Revenue*, 248 Neb. 518, 519, 537 N.W.2d 312, 314 (1995).

■   ¶ 9   The plain language of Oklahoma's statutes appears to favor the Tax Commission's position. Merely because the Internal Revenue Code allows TPQ to treat Pro–Quip as a new corporation, for purposes of calculating a deduction for assets, does not mean that the federal code overrides the intent of the Oklahoma Legislature in providing tax credits to encourage the creation of new jobs in manufacturing or processing in this state. Section 2357.4(C) provided that new employees meant "those employees who constitute a net increase in total employment as compared with employment levels prior to

---

4. 1985 Okla.Sess.Laws, ch. 342, § 1(B), codified at 68 O.S.Supp.1985, § 2357.4(B).

5. 1985 Okla.Sess.Laws, ch. 342, § 1(C), codified at 68 O.S.Supp.1985, § 2357.4(C).

6. This controversy involves only the 1986 tax year.

the investment in qualified property and whose employment is directly attributable to such investment." [7] Subsection B provided that "Qualified property" refers to machinery, fixtures, equipment, buildings, or other substantial improvements "placed in service in this state during the taxable year." [8] The legislative intent is to limit the tax credit to taxpayers who cause an *actual* increase in the number of employees engaged in manufacturing or processing in this state.[9] The corporate restructuring of TPQ and Pro-Quip in 1986 did not result in a net increase in the number of full-time-equivalent employees engaged in manufacturing or processing in this state. Neither TPQ nor Pro-Quip is entitled to a tax credit under § 2357.4 for the 1986 tax year.

¶ 10 Accordingly, the order of the Tax Commission is AFFIRMED, and the opinion of the Court of Civil Appeals is VACATED.

HODGES, LAVENDER, SIMMS, HARGRAVE, OPALA and WATT, JJ., concur.

KAUGER, C.J., and SUMMERS, V.C.J., concur in part; dissent in part.

SUMMERS, Vice Chief Justice, concurring in part; dissenting in part, with whom KAUGER, Chief Justice, joins.

¶ 1 I respectfully dissent in part because the approach taken by the majority appears to rest upon an unwarranted assumption. I would remand this proceeding to the Tax Commission for the purpose of a factual determination as described below.

¶ 2 In 1986 Elcor Corporation owned Ortloff Corporation, and Ortloff in turn owned Pro-Quip Corporation. A management group of Elcor Corporation formed TPQ Investments Corporation. The taxpayer in this case is TPQ Investments Corporation (TPQ or taxpayer). TPQ acquired Pro-Quip from Ortloff. TPQ is the taxpayer and it did not employ these employees prior to the acquisition of Pro-Quip. TPQ thus added employees to the TPQ entity.

¶ 3 The approach by the Court is, in its essence, an adoption of the Commission's view that Pro-Quip should be treated as a continuing corporation, and the same employer of the employees both before and after the acquisition. But TPQ is a different legal entity, a different taxpayer, and a different employer of the employees after the acquisition. TPQ, the taxpayer in this case, did have new employees. The treatment of TPQ by the Court and the Tax Commission makes sense only if TPQ is an alter ego of Pro-Quip. If Pro-Quip before the acquisition was managed and directed by the management group, or its individual members, then Pro-Quip after its acquisition by TPQ could be said to be the same employer for purposes of the tax statute. For examples of alter ego analyses of this nature see *Towe Antique Ford Foundation v. I.R.S.*, 999 F.2d 1387 (9th Cir.1993); *U.S. v. Gosnell*, 961 F.2d 1518 (10th Cir.1992).

¶ 4 Generally, a taxpayer has the burden of showing the erroneous nature of a tax assessment. *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Com'n*, 1988 OK 91, 768 P.2d 359. But alter ego status is usually a matter to be proven by the government. *Pate v. U.S. Dept. of Treasury I.R.S.*, 949 F.2d 1059 (10th Cir. 1991). See *Enterprise Management Consultants, Inc. v. State ex rel. Oklahoma Tax Com'n, supra*, where we said that the burden of proving the existence, nature and extent of the agency relationship rests ordinarily upon the party who asserts it. *Id.* 1988 OK 91 at

7. 1985 Okla.Sess.Laws, ch. 342, § 1.

8. Id.

9. The dissent would remand for the Tax Commission to determine if TPQ is an alter ego of Pro-Quip, or whether TPQ was truly a new legal entity. But even if the management group of Pro-Quip had become the owners of TPQ, which acquired Pro-Quip, that fact is irrelevant to our construction of § 2357.4. The statute is not intended to reward a mere change in ownership in manufacturing or reprocessing companies. The statute was intended to be an incentive to companies to actually increase the number of employees in this state by companies creating more jobs. Under the construction of the statute by the dissent, new owners could lay off employees and still receive a tax credit for the number of remaining employees, even though that result would be a net decrease in the number of employees engaged in manufacturing or processing in the state.

¶ 5, 768 P.2d 359. The order appealed states that at the time of this acquisition none of the shareholders of TPQ owned or controlled any stock in Elcor. But no other facts relevant to the alter-ego status have been advanced by the parties.

¶ 5 The briefs contain no assertion or admission of whether the management group controlled or managed Pro–Quip prior to its acquisition. I would thus reverse the Tax Commission's Order and remand to the Tax Commission for the purpose of producing evidence on this issue. If the management group, or the individual members thereof, controlled, directed, or managed Pro–Quip prior to the acquisition I would have no trouble drawing the same conclusion as the Court does. On the other hand, if the management group, or individual members thereof, did not control, manage, or direct Pro–Quip prior to its acquisition by TPQ, then TPQ is truly a new legal entity for the purpose of determining if it added employees to the State, and is thus entitled to the tax treatment it claims.