264 P.2d 179]

[Civ. No. 19674.   Second Dist., Div. One.   Dec. 14, 1953.]

DOROTHY MARCH HENLEY, as Executrix, etc., Respondent, v. FRANCHISE TAX BOARD, Appellant.

(1)

Edmund G. Brown, Attorney General, James E. Sabine, Assistant Attorney General, and Edward Sumner, Deputy Attorney General, for Appellant.

Wood, Crump, Rogers, Arndt & Evans and Stanley M. Arndt for Respondent.

DORAN, J.—The within appeal is taken from a judgment in favor of the respondent executrix, for refund of state income taxes, paid under protest, for the years 1938, 1939, 1940 and 1941. The case involves two different claims for refund, namely, credit on the California tax of a 5 per cent Canadian income tax on dividends paid by a Canadian corporation which neither did business in, nor had an office or agent in California; and a deduction for accounting expenses incurred in connection with management of personal investments.

Under section 17976 of the California Revenue and Taxation Code (formerly California Personal Income Tax Law, § 25), residents of California are allowed a credit against income taxes here imposed, in the amount of the "net income taxes imposed by and paid to another State or country on income taxable under this part." In subparagraph (a) of this section it is provided that "The credit shall be allowed only for taxes paid in the other state or country on income *derived from sources within that State or Country* which is taxable under its laws, irrespective of the residence or domicile of the recipient." (Respondent's italics.)

As stated in respondent's brief, "Appellant makes no attack on any ruling of the trial court. Appellant makes no claim that any finding is not supported by the evidence but concedes that the pertinent facts are not disputed by the parties. It is appellant's contention that "Taxpayers were not entitled to credit for the full amount of the Canadian tax inasmuch as that tax was not paid on income derived from Canada within the purview of section 25(a)(1) of the Personal Income Tax Act of 1935 as amended."

Quoting further from respondent's brief: "The deceased, (Mr. March) was a California resident. He owned stock in Canadian corporations, none of which operated in or had assets or even an office in California. On his death his heirs were required to and did pay an inheritance tax in Canada on the value of this stock. It was distributed to the California heirs after his death by virtue of the Canadian decree

of distribution. Canada had imposed a 5% income tax on dividends from Canadian corporations and required all corporations to withhold that 5% from all dividends, whether residents or nonresidents. This 5% was deducted as taxes and remitted to and thus collected by Canada. Mr. March, during his lifetime and his estate thereafter and up to the time of distribution, took credit for this 5% Canadian income tax under Section 17976 of the California Revenue and Taxation Code.''

The Franchise Tax Commissioner refused to allow this credit on the ground that it was not a tax on ''net income.'' The taxes were then paid under protest and this action followed. No claim was then made that the income tax was not ''on income from sources without the state,'' and as found by the trial court, this claim was not made until just before the trial. As stated in respondent's brief, the case of *Burgess* v. *State,* 71 Cal.App.2d 412 [162 P.2d 855], decided in 1945 that this 5 per cent Canadian withholding tax was a tax on ''net income,'' which decision represented the law when the present case came on for trial.

The first issue presented to the trial court, therefore, was whether the dividends received on the Canadian stock were derived from sources without California, to wit, from sources within Canada, and hence a proper credit against California income taxes. The trial court found as a matter of fact, that ''Said dividends were income derived from sources within Canada and were not income derived from sources within California.''

In this connection it was further found that ''At the time that the Franchise Tax Commissioner sent out the formal notices of the claimed deficiency he knew that the tax imposed was a tax on dividends withheld at the source by the Dominion of Canada and that the dividends were being paid by a Canadian corporation. With this knowledge he made no claim that the income tax was not 'on income from sources without the state' but conceded that the income was from Canadian sources''; that such a contention was not raised until at a conference between counsel previous to the trial. As hereinbefore indicated, there is no claim that these findings of fact are not supported by substantial evidence.

Appellant relies upon the cases of *Robinson* v. *McColgan,* 17 Cal.2d 423 [110 P.2d 426], and *Miller* v. *McColgan,* 17 Cal.2d 432 [110 P.2d 419, 134 A.L.R. 1424]. The Robinson case did not involve the question now at issue, but in the

Miller case it was held in the language of the headnote, that "a California resident owning stock in a Philippine Island corporation who pays the Philippine Government an income tax on dividends received, is not entitled to a credit therefor, since the source of the dividends is the stock itself as distinguished from the income of the corporation, and under the doctrine of *mobilia sequuntur personam* the stock has a situs at the residence of the taxpayer."

The respondent's brief, however, calls attention to the fact that the *Miller* v. *McColgan* case, 17 Cal.2d 432, just cited, was based upon *First Nat. Bank* v. *Maine* (1932), 284 U.S. 312 [52 S.Ct. 174, 76 L.Ed. 313], which latter case was specifically overruled in 1942 in *State Tax Comr. of Utah* v. *Aldrich*, 316 U.S. 174, 180 [62 S.Ct. 1008, 86 L.Ed. 1358, 139 A.L.R. 1436], for which reason *"Miller* v. *McColgan* is not the law today." Appellant's reply brief makes no comment on this situation.

By way of analogy, respondent's brief also notes that under section 1303 of the Revenue and Taxation Code, the State of California taxes Canadian residents upon inherited stock in California, thus taking the position the stock has a situs in California; directly discountenancing the *mobilia* doctrine of the Miller case just cited and relied upon by appellant. The Miller decision, it is also pointed out, dealt not with the estate of a decedent but with individuals.

Consideration of the record, and of the case law on the subject, leads to the conclusion that the decision of the trial court allowing credit for the Canadian income taxes paid by respondent on dividends from stocks of Canadian corporation, supported as it is by substantial evidence, must be affirmed. As hereinbefore mentioned, the pertinent facts are not in dispute, and, for the most part were the subject of stipulation at the trial.

In *Belden* v. *McColgan*, 72 Cal.App.2d 734 [165 P.2d 702], plaintiff, a California resident, received income during 1935 from sources in this state, and also from a partnership in the State of New York. Plaintiff filed a New York tax return as a nonresident and paid the indicated tax of $3,646.38 upon income from the New York partnership. In 1936 the taxpayer filed a California income tax return including both New York and California income, and deducted as a credit, (as did the taxpayer herein), the tax paid in New York, which credit was disallowed by the California Tax Commissioner; the tax was paid under protest, as was done in the instant

case. The taxpayer was notified of the rejection of the claim for credit in California after expiration of the time within which a claim for refund might have been made in New York. The reviewing court held that the taxpayer was entitled to credit for the tax paid in New York.

Both the Belden case and the present controversy involve personal property, and as said in respondent's brief, "If income derived from a New York brokerage partnership is income derived from sources without this state," (in the language of the California statute), then surely dividends received from a Canadian corporation doing business solely in Canada is income derived "from sources without this state," and the taxpayer was entitled to a California deduction for the income taxes paid in Canada.

The purpose of such a statute granting the taxpayer a deduction for income taxes paid in another state or country on income derived "from sources without this state," is the salutary one of preventing double taxation. It is neither fitting nor proper that taxing agencies or judicial tribunals, in construing such a provision, should seek to adopt a rigid, forced, or unduly strict interpretation in order to add a few dollars, ($68.39 in the instant case), to the state treasury, where the practical effect of such interpretation is to bring about the very thing that the statute sought to prevent.

Respondent's second claim for refund involves accounting expenses incurred by the executor, deducted in determining net taxable income for state income tax purposes, and disallowed by the taxing authorities. As found by the trial court, there was no dispute as to the amount, "The entire costs of the accounting services were actually paid by the estate, were reasonable in amount, and were necessary expenditures by the Executrix in operating the business of the estate and should be and are proper items of deductible expenses under the California Personal Income Tax Law for the years here involved."

In disallowing this claim, as found by the trial court, "The Board of Equalization applied a formula whereby it took the gross income from real estate and the gross income of the estate from securities, found the ratio between the gross income from real estate and the total gross income from both real estate and securities, applied the ratio to the accounting expenses and allowed as a deduction for state income tax purposes, the result, and refused to allow as a deduction the balance of the accounting expense. The use of such a formula

was unreasonable and arbitrary as applied to the facts in this case.'' This phase of the case involves a matter of only $6.76.

The appellant seeks to justify this refusal to deduct accounting expenses by citing *Meanley* v. *McColgan*, 49 Cal.2d 203 [121 P.2d 45], in which certain extraordinary attorney fees incurred in the management of investment securities were held not deductible. As pointed out in the respondent's brief, the Meanley case did not involve accounting expenses, and cannot be accepted as authority for applying a formula which, as found by the trial court, ''was unreasonable and arbitrary as applied to the facts in this case.''

Under section 900 of the Probate Code, executors are allowed ''all necessary expenses in the care, management and settlement of the estate.'' In *Estate of Boggs*, 33 Cal.App.2d 30 [90 P.2d 814], involving accounting expenses incurred by an executrix in an estate consisting of both real estate and corporate stock, the reviewing court said, ''An executrix should be allowed expert assistance in handling the estate if . . . reasonably necessary and it is largely within the discretion of the probate court whether such employment is reasonably necessary. The trial court in the instant case found, as a matter of fact, that the deductions made herein were both reasonable and necessary, and that the formula adopted by the taxing agency was arbitrary and unreasonable. These findings appear to be amply supported by both law and evidence, and no cogent reason has been presented why they should now be disregarded.

The judgment is affirmed.

White, P. J., and Drapeau, J., concurred.

A petition for a rehearing was denied January 4, 1954.