[Civ. No. 23321.   Second Dist., Div. Two.   July 29, 1959.]

JOHN BURNHAM et al., Respondents, v. FRANCHISE TAX BOARD, Appellant.

Stanley Mosk, Attorney General, James E. Sabine, Assistant Attorney General, and Dan Kaufmann, Deputy Attorney General, for Appellant.

Torrance & Wansley and Albert W. Strang for Respondents.

HERNDON, J.—This action was brought by plaintiffs, hereinafter called the "taxpayers," to recover income taxes paid under protest to the State of California following disallowance by the Franchise Tax Board, hereinafter called the "Board," of credit for certain Canadian income taxes paid by the taxpayers. The trial court decided the legal issues in accordance with the taxpayers' contentions and rendered judgment accordingly. The Board brings this appeal.

The facts are stipulated. The returns involved are for the years 1949-1953, inclusive. During these years, the taxpayers were residing and domiciled in California. In their California income tax returns for the years mentioned, they reported certain dividends from the stock of corporations incorporated in Canada and operating and maintaining their principal places of business in that country. Under provisions of the Canadian tax laws, these dividends had been subjected to a tax of 15 per cent which was deducted and withheld by the corporations and paid over to the Canadian taxing authorities. For example, if a dividend amounted to $1,000 the corporation would withhold $150 and remit that amount to the Canadian tax authorities and would pay the balance of $850 to the stockholder.

The taxpayers filed claims for refund of part of the taxes paid on the ground that the Canadian taxes withheld from

their dividend payments should be credited against their California income tax. The Board refused to allow the Canadian taxes as a *credit* but did allow them as a *deduction*[1] and granted a partial refund on that basis. Following unsuccessful resort to appropriate administrative procedures (Rev. & Tax. Code, § 19059 et seq.), the taxpayers instituted the instant action.

The California Personal Income Tax Law provides for the taxation of the entire net income of persons resident in this state. (Rev. & Tax. Code, § 17041, subd. (a), formerly § 17052.) At the times here involved, the California statute provided, however, that under certain specified conditions, the California resident was entitled to a credit against the California tax for "*net income taxes*" paid to another country on income derived from sources within that country. (Rev. & Tax. Code, § 18001, formerly § 17976.) The relevant provisions of section 18001 of the Revenue and Taxation Code read as follows:

"Subject to the following conditions, residents shall be allowed a credit against the taxes imposed by this part for *net income taxes* imposed by and paid to another state or country on income taxable under this part:

"(a) The credit shall be allowed only for taxes paid to the other state or country on *income derived from sources within that state or country*[2] *which is taxable under its laws irrespective of the residence or domicile of the recipient. . . .*" (Emphasis added.)

■ Since the allowability of the credit claimed under the terms of the quoted provisions of the California statute depends upon the character of the tax exacted under the law of the foreign state, a careful analysis of the applicable Canadian tax law is a manifest necessity. And, inasmuch as the credit is allowable only for "*net income taxes*" imposed by and paid to the foreign state the primary objective of our analysis will be

---

[1]The difference between a deduction and a credit is significant. If a tax paid to another state or country is allowed as a deduction, the amount of the foreign tax is subtracted from the gross income in computing the net income subject to the California tax. If the tax paid to another state or country is allowed as a credit, the amount of the California Personal Income Tax is first computed without regard to the foreign tax and then from the California tax so computed the foreign tax is subtracted to determine the net amount of tax which must be paid to the State of California.

[2]In 1957, section 18001 was amended to eliminate the credit for taxes paid foreign countries by deleting the words "or country" wherever they appeared in the section (1957 Stats., ch. 215, p. 877).

to answer this determinative question: *whether the Canadian income tax law in effect during the years 1949 to 1953 imposed a "net income tax"?*

A satisfactory answer to this controlling question calls for a detailed examination of the Canadian plan of taxation. And since the taxpayers rely upon certain former decisions of Division One of this court which decided the nature of Canadian income taxes paid under tax laws in effect during 1941 and earlier years (*Burgess* v. *State*, 71 Cal.App.2d 412 [162 P.2d 855], and *Henley* v. *Franchise Tax Board*, 122 Cal.App.2d 1 [264 P.2d 179]), we must ascertain whether appellant is correct in contending that substantial changes in Canadian law since 1941 have deprived these earlier decisions of any controlling authority in the instant case.

The Burgess and Henley cases dealt with taxes imposed by Canada under the Income War Tax Act of 1917, as amended. Although that law was intended as a temporary measure to provide extra revenue to defray the heavy expenditures due to World War I, it was retained throughout the period between the world wars, and, like many such taxes, ". . . has now come to be regarded on all sides as a permanent part of Canada's fiscal system." (La Brie, The Meaning of Income in the Law of Income Tax, n. 3, at p. 5 (1953).)

The Act of 1917, as originally enacted, did not tax Canadian dividends received by nonresident aliens such as the taxpayers here. Its impositions were then limited to Canadian residents, sojourners, and persons employed in Canada during the tax year and those who carried on a business there, or derived income from services rendered there. As amended in 1927, the Canadian law provided: "There shall be assessed, levied and paid upon the income during the preceding year of every person . . . residing or ordinarily resident in Canada . . . who sojourns in Canada . . . is employed in Canada . . . is carrying on business in Canada . . . or . . . who . . . derives income for services rendered in Canada . . . a tax at the rates . . . set forth in . . . this Act. . . ." (Can. Rev. Stat. c. 97, § 9, subd. (1) (1927).) The act further provided that ". . . corporations and joint stock companies [resident or carrying on business in Canada] . . . shall pay a tax . . . upon income . . ." (Can. Rev. Stat. ch. 97, § 9, subd. (2) (1927).) "For the purposes of this Act, 'income' means the annual net profit or gain . . . received by a person . . . whether derived from sources within Canada or elsewhere; and shall include the interest, dividends or profits directly or indirectly received

from money at interest . . . or from stocks, or from any other investment . . ." (Can. Rev. Stat. ch. 97, § 3; see Stikeman, Income War Tax Act and Excess Profits Tax Act 1940—Canada—1927 to 1948 Permanent Volume (1948) 47, 158-159.)

As stated in La Brie, *op. cit. supra,* page 27 "The word 'net' in this statutory definition stands out as affirming the plain ordinary meaning of profits and gains established by the English and Canadian Courts." Thus, we may observe that the scheme of taxation of residents of Canada or persons carrying on activities in that nation as provided for in the Canadian Income War Tax Act was essentially a tax on net income not substantially different in character from our federal income tax law.

By amendment in 1933 there was added a new section 9B which for the first time imposed a tax on nonresidents. As amended the following year it provided in part as follows: "(2) In addition to any other tax imposed by this Act an income tax of five per centum is hereby imposed on all persons who are non-residents of Canada in respect of (a) All dividends . . . (b) All interest . . . (c) All interest received by a non-resident parent company . . . (d) All income . . . from any Canadian estate or trust . . .

"  .   .   .   .   .   .   .   .   .   .   .   .

"(4) In the case of interest or dividends . . . the taxes imposed by this section shall be collected by the debtor who shall withhold five per centum of the interest or dividend on the obligation and remit the same to the Receiver General of Canada.

"(5) The exemptions provided by section four of this Act shall not apply in the case of the taxes imposed by this section except those exemptions provided by paragraphs (a), (b), (c) and (k) of the said section four." (See Stikeman, *op. cit. supra,* 168-176.)

It is to be noted that the four exemptions allowed by the last quoted subsection did not affect nonresident American aliens. They related only to the income of certain specified Canadian and British officials, representatives of foreign governments and corporations whose assets and activities were entirely outside of Canada.

The Act of 1917 was several times amended after 1933. In 1941, the nonresident tax was increased from 5 to 15 per cent. An amendment of particular significance in relation to the purpose of our present analysis was enacted in 1942. It

amended paragraph (5) of section 9B to read as follows: "(5) No exemptions, deductions or tax credits provided by any other section of this Act shall apply in the case of the taxes imposed by this section [9B] except those exemptions provided by paragraphs (a), (b), (c) and (k) of section four of this Act."

The four exceptions to the prohibition against exemptions remained unchanged. Thus the point to be especially noted is that the 1942 amendment expressly denied to the nonresident taxpayer, not only the privilege of any *exemption* but also the benefit of any *deductions* or *tax credits*. The language of this amendment appeared to constitute a rather explicit and unequivocal declaration that nonresidents were to be taxed upon gross receipts rather than upon their net income.

In the Canadian taxing statutes, an exempting provision is one which grants freedom from the duty or obligation otherwise imposed. A deduction generally defines amounts which are to be subtracted from the income received and assessable in order to arrive at the amount on which the tax is to be calculated. And a tax credit applies to the tax due in order to ascertain the sum payable. (See La Brie, *supra*, The Meaning of Income in the Law of Income Tax, 223-224.) All three terms were used in the Canadian Income War Tax Act, particularly in the provision 9B (5) above quoted.

In 1948 the Income War Tax Act was replaced by the Canadian Income Tax Act, which went into effect on January 1, 1949. (Can Rev. Stat. ch. 52.) Although they followed the same general pattern of taxation, there are important differences in these two statutes, which we will hereafter refer to as the 1917 Act and the 1948 Act. For example, in contrast to the 1917 Act, the 1948 Act contained no definition of income. (See La Brie, The Meaning of Income, *supra*, pp. 27, 52.) As it applied to resident taxpayers the 1948 Act introduced the concept of taxable income—as meaning the income of the taxpayer minus certain deductions on the basis of personal status and income expenditure. These "reliefs," to use the terminology of English jurisprudence, were not in any way related to the manner or method by which the income arose or was earned. Thus the concepts of "net income" and "taxable income" were distinguished in the 1948 Act. (See La Brie, *op. cit. supra*, pp. 53-54.) In the 1917 Act "income" was defined and then made subject to a variety of deductions and exemptions in the case of *resident* taxpayers. Evidently it was these provisions which necessitated the 1942 legislation adding

"deductions" and "tax credits" to "exemptions" as "reliefs" to be denied *nonresidents.*

A portion of the Canadian taxes involved in the case at bar were imposed by the 1948 Act and the remainder by the statute of 1952 later to be discussed. The provisions of Part I of the 1948 Act applied to *resident* taxpayers and, as we have seen, imposed a tax which might appropriately be classified as a net income tax. Part II of the 1948 Act was entitled *"Tax on Income from Canada of Non-Resident Persons."* The pertinent provisions of Part II read as follows:

"96. (1) Every nonresident person shall pay an income tax of 15% on every amount that a person resident in Canada pays or credits, or is deemed by Part I to pay or credit, to him as, on account or in lieu of payment of, or in satisfaction of (a) a dividend . . . (b) interest . . . (c) income of or from an estate or trust . . .

"97. (1) The tax payable under Section 96 is payable on the amounts described therein *without any deduction from those amounts whatsoever.*" (Emphasis added.)

In 1952 the Canadian income tax law was again revised and its sections were renumbered. The tax on income of *residents* was imposed by the provisions of Part I and the tax upon payments to nonresidents was imposed by the provisions of Part III. (See La Brie, Introduction to Income Tax Law Canada (1955), at p. 3). Former sections 96 (1) and 97 (1) above quoted became sections 106 (1) and 108 (1), respectively. We find that the 1952 legislation effected no substantial change in the basic character of the taxes imposed by the Act of 1948.

The Canadian tax upon payments to nonresidents has been described as follows by an eminent Canadian tax authority: "Part III of the *Income Tax Act* (§§ 106 to 110) imposes taxation on nonresident persons by reference to specified classes of payments by persons resident in Canada to those nonresident persons. The tax imposed under Part III is different in many ways from that imposed under Part I. *The tax under Part III is on gross income without allowances and exemptions.* Section 108 (1) provides that the tax payable under sec. 106 is payable on the amounts prescribed therein *without any deduction from those amounts whatsoever.* This provision excludes both the deductions permitted under Part I in computing income and in computing taxable income." (La Brie, Introduction to Income Tax Law Canada (1955), *supra,* 310-311 (1955).) (Emphasis added.)

The conclusion appears to be inescapable that the Canadian tax paid by the taxpayers in the case at bar pursuant to the Act of 1948, as well as those paid under the Act of 1952, were taxes imposed on their *gross* income from the Canadian sources. These taxes, therefore, were not "net in-come taxes" and did not qualify as allowable credits under section 18001 of the California Revenue and Taxation Code.

The settled rule that credit provisions of a tax statute are to be strictly construed strengthens the conclusion that the credits claimed in the instant case were properly disallowed. As stated in *Miller* v. *McColgan,* 17 Cal.2d 432, 441-442 [110 P.2d 419, 134 A.L.R. 1424] : ". . . the provision allowing a credit . . . is in effect an exemption from liability for a tax already determined and admittedly valid, and such statute must be strictly construed against the taxpayer." (See also *Santa Fe Transportation Co.* v. *State Board of Equalization,* 51 Cal.2d 531, 539 [334 P.2d 907].)

The decisions in *Burgess* v. *State, supra,* 71 Cal.App.2d 412, and *Henley* v. *Franchise Tax Board, supra,* 122 Cal.App.2d 1, as we have heretofore indicated, held that Canadian income taxes imposed by the 1917 Act upon the income of California residents from Canadian sources during the period 1935 to 1941 were net income taxes, and, as such, allowable as credits against the California income tax. These decisions are not controlling here because, as our analysis has shown, they dealt with an earlier Canadian statute differing very substantially from the law under which the tax with which we are here concerned was imposed.

We are in accord with the following observation of the Supreme Court of Oregon in *Keyes* v. *Chambers* (1957), 209 Ore. 640 [307 P.2d 498, at page 507] : "We also note that the facts in the Henley and Burgess cases disclose that all Canadian taxes paid were under the Act of 1917 and prior to its amendment in 1942, which added subsection 5 to section 9B, previously referred to. This was a substantial change of distinguishing importance so far as nonresident Canadian taxpayers were concerned. The California cases, i.e., Burgess and Henley, are only interested in taxes imposed under the Act of 1917 and have no reference to the Act of 1948 under which Mrs. Keyes, the taxpayer here, was taxed in 1949 and 1950."

The Oregon court used the foregoing language in refusing to follow the holdings in *Burgess* and *Henley* in a case involving credits claimed under an Oregon statute, the language of which is almost identical with that of our section 18001. The

taxes involved in the Oregon case were for the years 1947 to 1950, inclusive.

Our holding with respect to the nature of the Canadian taxes here involved renders it unnecessary for us to determine (1) whether the dividends which the taxpayers received from the Canadian corporations constituted income derived from sources within Canada, or (2) whether, as held by the Supreme Court of Oregon in *Keyes* v. *Chambers, supra,* the substantially different treatment which is accorded to residents and nonresidents under the applicable Canadian statutes would preclude allowance of the credits claimed by the taxpayers.

The judgment is reversed.

Fox, P. J., and Ashburn, J., concurred.