898 P.2d 990

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellee,**

v.

**Donald L. MORI, Defendant–Appellant.**

No. 1 CA–CV 93–0127.

Court of Appeals of Arizona, Division 1, Department D.

June 20, 1995.

As Corrected June 22, 1995.

Graham & Associates, Ltd. by Michael A. Graham and Karen L. Westover, Phoenix, for plaintiff-appellee.

Ellis, Baker & Porter, Ltd. by John R. Politan and George H. King, Phoenix, for defendant-appellant.

OPINION

FIDEL, Presiding Judge.

Two questions arise from the trial court's allocation of taxable costs [1] in a condemnation case. After a jury awarded the property owner more than the condemnor had offered but less than his counter-demand, the trial

---

1. "Taxable costs" is the term used by our legislature in Arizona Revised Statutes Annotated ("A.R.S.") § 12–332 to describe certain statutorily designated costs to be awarded to the success-ful party in a civil action.in the superior court and "taxed" or included in the judgment against the unsuccessful party. *See also* A.R.S. § 12–341.

court assessed each party a portion of the parties' combined taxable costs. Because the jury verdict was nearer the condemnor's offer than the owner's demand, the court assessed the owner a greater share of the costs. The owner's appeal presents the questions whether, at the conclusion of a condemnation trial, an Arizona court has statutory or constitutional discretion to either (1) deny full recovery of taxable costs or (2) assess a portion of the condemnor's taxable costs to a property owner who has refused the condemnor's offer and received a higher verdict at trial. With an exception, not applicable here, for frivolous or obstructive litigation, our answer to both questions is no.

## BACKGROUND

When the appellant Mori and his late wife rejected an offer of $675,000 for certain parcels of real property near Sky Harbor International Airport, the City of Phoenix filed the underlying condemnation suits. Depositing $675,000 with the clerk of the superior court, the City obtained an "Order for Immediate Possession." Mori withdrew the City's deposit but contested its adequacy, claiming fair market value between $1,053,000 and $1,200,000. The dispute advanced to trial, the jury set fair market value at $842,520, and the opposing parties both sought taxable costs. Combining their allowable costs, the trial court assigned each party a share proportionate to the comparative distance of that party's settlement offer from the jury's verdict. Because the difference between the jury verdict and the City's settlement offer "represent[ed] one-third of the spread between the City and Mr. Mori, the court [ ] apportioned the costs one third to the City and two thirds to Mr. Mori."[2] From the resulting net cost assessment of $2,667, Mori appeals.

**2.** According to the minute entry, the parties agreed that the City's highest offer was $675,000 and the owner's lowest offer was $1,181,000. At trial, however, the City argued that the value of the property as of the statutory valuation date was $630,000, claiming that property values had decreased from the time of their first appraisal.

## DISCUSSION

The trial court's discretion to allocate the costs of condemnation litigation arises from A.R.S. § 12–1128(A):

Costs may be allowed or not, and if allowed may be apportioned between the parties on the same or adverse sides, in the discretion of the court.

Although the statute does not define the limits of the trial court's discretion, the owner argues that limits arise both from statutory history and from the requirement that a property owner receive just compensation when the government takes private property for public use. *See* Ariz. Const. art. 2, § 17.

We may resolve this case by statutory interpretation and need refer only tangentially to Arizona's just compensation clause. Section 12–1128(A) predates Arizona statehood. Originally enacted as Civil Code 1901, § 2466, it was taken verbatim from California Civil Procedure Code § 1255 (repealed 1976)[3] and remains unamended since adoption. In 1893, eight years before our territorial legislature chose to adopt California's statute as our own, the California Supreme Court interpreted that statute, in accordance with the California Constitution, as permitting trial courts only limited discretion to allocate costs against condemnees. *San Francisco v. Collins*, 98 Cal. 259, 33 P. 56, 57 (1893).

In *Collins* the landowners achieved a favorable judgment in the trial court, but appealed from the court's denial of their costs and assessment of half the jury and reporter fees. To resolve the appeal, the California Supreme Court tailored the broad language of § 1255 to the requirement of article 1, § 14 (now § 19), of the California Constitution that landowners receive just compensation for public takings. *Id.* The court observed that the trial court had statutory and constitutional discretion "to determine what are proper and what are improper items of

**3.** The California legislature replaced § 1255 with § 1268.710 as part of a total revision of its eminent domain statutes in 1976. *See* Cal.Civ. P.Code §§ 1230.010 et seq.

cost in proceedings of this kind, and to disallow such as are improper." *Id.* The trial court likewise had discretion to require condemnees to pay their own costs or the condemnor's costs if "incurred only by reason of unnecessary obstructive proceedings ... interposed in bad faith." But the trial court lacked discretion "[t]o require the defendants ... to pay any portion of their costs *necessarily* incidental to the trial ... or any part of the costs of the plaintiff, [as such] would reduce the just compensation awarded by the jury." *Id.* (emphasis added).[4]

■ *Collins* is especially significant because it gave contemporaneous meaning to the California statute that our territorial legislature chose to copy. Our territorial courts then held, and Arizona state courts have continued to hold, that "[a] statute which is adopted from another state will be presumed to have been adopted with a construction *previously* placed upon it by courts of that state." *Jackson v. Phoenixflight Prods., Inc.*, 145 Ariz. 242, 245, 700 P.2d 1342, 1345 (1985) (emphasis added); *see Territory of Arizona v. Delinquent Tax–List*, 3 Ariz. 117, 120, 21 P. 768, 769 (1889).

We underscore the word "previously." No such presumption attaches to the later constructions of statutes we have adopted from other states. Later decisions are persuasive only insofar as they conform to our understanding of "justice and public policy." *State v. Culver*, 103 Ariz. 505, 507, 446 P.2d 234, 236 (1968); *see also State v. McDonald*, 88

Ariz. 1, 14, 352 P.2d 343, 351 (1960). *Collins*, however, qualifies for the presumption as a case that predated our adoption of § 1255 of the California Civil Procedure Code.

We recognize that *Collins* was a product of California constitutional considerations and that our territorial legislature, when adopting California's statute, did not face similar constitutional constraints. This, however, does not dissipate the presumption that our territorial legislature adopted California's statute with the construction that *Collins* placed upon it. Arizona sought and anticipated statehood in 1901; our territorial courts were protective of landowners' interests in just compensation condemnation cases, *e.g., De Hansen v. District Court*, 11 Ariz. 379, 94 P. 1125 (1908); and in finally achieving statehood in 1914, we enacted a "just compensation" clause essentially indistinguishable from that of California at the time of *Collins*.[5] *Compare* Cal. Const. art. 1, § 14 (original text as revised in 1879) *with* Ariz. Const. art. 2, § 17. In the years since statehood, no Arizona legislature has found it desirable to revise the statute that our territorial legislature adopted in 1901.[6] Finding no inconsistency between *Collins* and the past or present policy of just compensation in Arizona, we regard *Collins* as a reliable guidepost to the enduring meaning of Arizona's statute.

The City mistakenly reads *State v. McDonald*, 88 Ariz. 1, 352 P.2d 343, a 1960 decision by our supreme court, as implicitly

---

**4.** The *Collins* court did not consider the interplay of pretrial settlement positions and cost assessment. Nor did any California appeal present that question before 1901, when Arizona's statute took effect. Thus, when Arizona's statute was enacted, there was no California case law that determined whether a California court could assess some portion of the condemnor's costs against a property owner who rejected a pretrial offer and achieved a *lesser* award at trial. In a somewhat comparable case, however, the California Supreme Court had permitted assessment of costs against a condemnee who had worsened her position in a second trial. *Los Angeles, P. & G. Ry. Co. v. Rump*, 104 Cal. 20, 37 P. 859, 860 (1894). In *Rump*, the condemnee had sought a second trial in an effort to increase the compensation that a jury had awarded in the first trial; she received a lower judgment the second time around, and the trial court was upheld in assessing both parties' trial costs against her. *Id.*

**5.** At Arizona's constitutional convention, the "just compensation" clause generated debate over only one issue: whether to permit municipal corporations to take possession of property before a jury determined just compensation or whether to require municipal corporations, like other condemnors, to await the conclusion of judicial proceedings before taking possession. *See* John S. Goff, *The Records of the Arizona Constitutional Convention of 1910*, 661–63.

**6.** In contrast, California has extensively revised its former statute. *See supra* note 3. Similarly, Arizona has made relatively few changes to Article 2, § 17, none of which are pertinent to this case, whereas California extensively revised art. 1, § 14 in 1911 and 1918.

rejecting the notion that a statutory cost award is mandated under A.R.S. § 12–1128(A). But in fact *McDonald* supports the position of the owners. In *McDonald* the supreme court concluded that § 12–1128(A) neither requires nor permits reimbursing a successful property owner's expert witness fees. 88 Ariz. at 14, 352 P.2d at 351. But the court expressly distinguished expert witness fees from taxable costs. *Id.* And in doing so, the *McDonald* court cited as persuasive two California cases that observed the same distinction. *Id.* (citing *Los Angeles v. Vickers*, 81 Cal.App. 737, 254 P. 687 (1927), and *California v. Bowman*, 173 Cal.App.2d 416, 343 P.2d 267 (Cal.Dist.Ct.App.1959)). In *Vickers* and *Bowman*, the California courts that denied reimbursement of the owners' appraisers' fees did not disturb the *Collins* requirement that the owner's taxable costs be reimbursed. *Id.* (emphasis added).

We confine our holding to the circumstances before us. The dispositive element of this case is that this owner correctly concluded that the City's offer did not suffice to provide him just compensation. Although the jury did not place so high a dollar value on the property as Mori, it nonetheless valued the property more highly than the City and thus vindicated Mori's decision to resort to trial. Under these circumstances, we hold that the trial court lacked statutory discretion to deny Mori his taxable costs or to assess him any portion of the City's taxable costs. *See Collins*, 33 P. at 57.

■ Though we thus attribute historical limits to the trial court's discretion under § 12–1128(A), substantial discretion nevertheless remains. As the *Collins* court observed, the trial court has discretion to decide what costs are properly taxable in favor of the prevailing party. *Id.* The court has discretion to deny even a prevailing condemnee "unnecessary expenditures, made in bad faith, for the purpose of increasing the costs or obstructing the proceeding," and to assess an obstructive condemnee the costs of the condemnor. *Id.; see also* A.R.S. §§ 12–341.01(C), 12–349. The court has discretion to apportion costs, where appropriate, between parties on the same side—as, for example, when a city and county join as condemnors. A.R.S. § 12–1128(A). And the court has discretion, in our judgment, to deny costs to a condemnee—or to tax the condemnor's costs against a condemnee—who has refused the condemnor's offer, forced the case unnecessarily to trial, and achieved a verdict no higher than the offer. *See supra* note 4. We do not intend these examples to be exhaustive. They are merely illustrative of the court's discretion pursuant to § 12–1128(A). We hold, however, that the court exceeded its discretion by its order in this case.

## CONCLUSION

The distinguishing feature of this case is that the verdict exceeded the offer. Under these circumstances, and in the absence of any finding of obstructive behavior or bad faith, the trial court lacked discretion to tax the owner with any portion of the City's costs and was obliged to award the owner all of the taxable costs that he had reasonably incurred. We reverse the trial court's cost assessment, remand for proceedings consistent with this opinion, and award the owner his taxable costs upon appeal.

GRANT and GERBER, JJ., concur.