965 P.2d 56

STATE of Arizona, ex rel., the ARIZONA DEPARTMENT OF REVENUE, Plaintiff–Appellee,

v.

Alexander S. and Phyllis M. SHORT, Defendants–Appellants.

No. 1 CA–TX 97–0004.

Court of Appeals of Arizona, Division 1, Department T.

March 3, 1998.

Review Denied Oct. 20, 1998.

Grant Woods, Attorney General by Kimberly J. Cygan, Assistant Attorney General, Phoenix, for Plaintiff–Appellee.

Snell & Wilmer by Janet E. Barton, Stephanie R. Derby, Phoenix, for Defendants–Appellants.

## OPINION

WEISBERG, Judge.

¶1 Alexander S. Short and Phyllis M. Short ("the Shorts") appeal from summary judgment on their claim for a refund of Arizona resident individual income taxes assessed when the Arizona Department of Revenue ("ADOR") disallowed a tax credit claimed on their 1989 return. The claimed credit was for "net income taxes imposed by and paid to another state or country on income taxable under this chapter...." Ariz.Rev.Stat. Ann. ("A.R.S.") § 43–1071(A)(Supp.1997) ("§ 43–1071(A)"). We must decide whether the tax court erred by ruling that the Canadian income tax withheld from Mr. Short's Canadian military pension in 1989 did not qualify the Shorts for that credit. For the reasons that follow, we affirm the tax court.

## FACTS AND PROCEDURAL HISTORY

¶2 In 1989, the Shorts resided in Arizona. During that year, the Canadian government paid military pension benefits to Mr. Short. As required by section 215(1) of Part XIII of the Canadian Income Tax Act, the Canadian government withheld from each pension payment certain taxes on Canadian-source income imposed on nonresidents of Canada under section 212(1)(h) of Part XIII.

¶3 The Shorts had the option to avoid these taxes by electing, pursuant to section 217 of Part XIII, to file a return and be taxed instead under Part I of the Canadian Income Tax Act, entitled "Income Tax." They chose not to do so.

¶4 In completing their 1989 Arizona return, the Shorts deducted Mr. Short's total 1989 Canadian military pension benefits of $20,481.21 from their actual federal adjusted gross income of $58,845.80. Their resulting federal adjusted gross income was $38,-364.59.

¶5 ADOR disallowed the deduction and assessed the Shorts $2,188.41 for additional taxes, a ten percent late payment penalty, and interest. The Shorts paid the assessment and filed a protest, contending that they were entitled to a credit against their Arizona income tax liability equal to the Canadian tax that was withheld from Mr.

Short's pension. ADOR prevailed on the protest.

¶6 On appeal, Division Two of the State Board of Tax Appeals ruled for the Shorts. ADOR therefore appealed to the tax court. On cross-motions for summary judgment, the tax court ruled for ADOR. It held:

> The issue ... is whether "net income taxes imposed" means the taxpayer gets a credit only when Canada imposes its tax on net income.
>
> The phrase obviously can be read two ways: (1) that a credit is given only when the other country imposes its tax on net income, and (2) a credit is imposed on the net sum the other country ends up taking from the taxpayer (taxes minus credits or refunds given by the other country, which subsection B of A.R.S. § 43–1071 provides for).
>
> Each side maintains that I should read the plain language of the statute in a common sense manner, strive for a sensible construction, avoid absurd results, and come as close as I can to what the legislature intended. I think I can do that. Unfortunately, there are no Arizona cases that help me. There is a long-standing interpretation by the Department of Revenue reading the statute as #1 above—which shows that at least a cadre of intelligent people think that is a reasonable reading. And there are also some old California cases that seem to come close to approving such an interpretation.
>
> Considering all of these things, it seems to me that the most reasonable way to read A.R.S. § 43–1071 is that it allows a credit only when the other country imposes its tax on net income.

The Shorts appeal from the judgment entered in accordance with this ruling. We have appellate jurisdiction under A.R.S. section 12–2101(B). The Chief Judge has assigned this appeal to Department T of this court as required by A.R.S. sections 12–120.04(G) and 12–170(C).

## ANALYSIS

### The parties assert different definitions of "net" income

¶7 The tax court adopted ADOR's interpretation of § 43–1071(A)—that it per-

mits credits against Arizona income taxes only for those non-Arizona income taxes on which deductions, exclusions, or other income adjustments are permitted in determining the tax base. The tax court thereby defined "net income taxes" as a type of income tax, rather than as the resulting amount of income taxes paid by the taxpayer.

¶ 8  The Shorts contend that that interpretation thwarts the legislature's intent and the public policy against double taxation on the same income by more than one country or state. They maintain that the tax court's interpretation cannot rationally be applied in other likely circumstances, as it would lead to arbitrary and absurd results. The Shorts argue that these undesirable consequences can be avoided by interpreting the phrase "net income taxes" within § 43–1071(A) to merely refer to an affected taxpayer's "ultimate and final income tax liability to another state or country...."

### ADOR's interpretation gives "net" meaning

■ ¶ 9  In interpreting a statute, our function is to effectuate the legislative intent behind the statute. *Mail Boxes v. Industrial Comm'n*, 181 Ariz. 119, 121, 888 P.2d 777, 779 (1995). The best and most reliable indicator of that intent is the statute's own words. *See Zamora v. Reinstein*, 185 Ariz. 272, 275, 915 P.2d 1227, 1230 (1996).

■ ¶ 10  If it had been the legislature's intent to allow a credit for any "ultimate" or "final" income tax obligation imposed by a non-Arizona taxing jurisdiction on income taxable by Arizona, it could have conveyed that meaning simply and clearly by providing a credit for "income taxes imposed by and paid to another state or country." The legislature did not choose to do so. Instead, it chose to allow a credit for "*net* income taxes imposed by and paid to another state or country...." We are required to construe any statute before us so that all its words contribute to its meaning and none are rendered superfluous. *See id.* We must therefore accord some function to the word "net"

that changes the meaning that § 43–1071(A) would carry in the absence of that word.

¶ 11  Contrary to the Shorts' suggestion, the definition of "net income" in A.R.S. section 43–1001(7) fails to supply this function. The introductory clause of section 43–1001 states that definitions in that section apply only if the context of the statute in question does not require a different meaning. A.R.S. section 1001(7) defines "net income" as "taxable income." Interpreting § 43–1071(A) in accordance with that definition would thereby yield a credit for "taxable income taxes" imposed by and paid to other countries or states, rendering the term "net" meaningless. Since "income taxes" are by definition imposed on "taxable income," the context of § 43–1071(A) implies that a different meaning of "net income" must have been intended.

¶ 12  A.R.S. section 1–213 requires us to interpret words in statutes according to the common and approved use of the language, unless they have acquired a special or technical meaning, in which case the special or technical meaning is to be used. The American Heritage Dictionary of the English Language (1970) defines the adjective "net" this way: "1. *Abbr.* n. Remaining after all necessary deductions have been made or all losses accounted for: *net profit; net weight.* 2. Ultimate; final: *net result; net conclusion.*" Here, definition one is the appropriate meaning of "net" in the financial context of taxation. *See also* Webster's Third New International Dictionary at 1520 (1971)("net income" is "balance of gross income remaining after deducting related costs and expenses usu. for a given period and losses allocable to the period"). Accordingly, to ascribe some function to the term "net" in § 43–1071(A), we accept ADOR's interpretation, which authorizes a credit only for other countries' income taxes that allow deductions, exclusions, or other income adjustments in calculating the tax base, and thereby are "net income taxes."

### Presumption that administrative interpretation is correct

¶ 13  In *Hamilton v. State*, 186 Ariz. 590, 925 P.2d 731 (App.1996), this court applied a rule of construction that, in the absence of contrary legislative intent, acknowledges the presumption that an administrative interpretation is correct. "Where the legislature re-

enacts a statute ... after uniform construction by the officers required to act under it, the presumption [is] that the legislature knew of such construction and adopted it in re-enacting the statute." *Id.* at 595, 925 P.2d at 736 (*quoting Jenney v. Arizona Express, Inc.*, 89 Ariz. 343, 346, 362 P.2d 664, 667 (1961)). This rule of construction is helpful here.

■ ¶14 In 1978, the legislature repealed former A.R.S. section 43–128 and re-enacted it as § 43–1071(A), leaving the term "net income taxes" undisturbed. At the time, a long-standing administrative rule had interpreted the statute to exclude credit for taxes imposed on gross income:

> Since credit may be allowed only for net income taxes, no credit may be allowed for taxes imposed on gross receipts, gross income, dividends, etc., which must be paid regardless of whether or not the subject of the tax constitutes net income, even though in particular instances the subject · taxed is income in whole or in part.

Administrative Procedure Act, tit. 41, § 128(a)–1 (1955). While the Shorts attempt to distinguish *Hamilton* on the basis that the statute at issue there dealt with "adjusted gross income as defined by the Department," *see* 186 Ariz. at 595, 925 P.2d at 736, *Hamilton*'s application here does not depend upon that distinction. The relevant premise of *Hamilton* is that the legislature is presumed to know how an administrative department interprets the statutes it is responsible to administer. Therefore, under *Hamilton,* we must presume that the 1978 legislature was aware of and intended ADOR's interpretation [1] when it re-enacted § 43–1071(A).

### California cases support the interpretation

¶15 ADOR's interpretation is also supported by those decisions interpreting the California statute from which Arizona adopted the language of former A.R.S. section 43–128. *See Burnham v. Franchise Tax Bd.*, 172 Cal.App.2d 438, 341 P.2d 833, 837 (1959)(Canadian income taxes withheld from Canadian corporate dividend distributions

under law similar to Part XIII, section 212(1), were not "net income taxes" qualifying for California credit because imposed on gross income); *Clemens v. Franchise Tax Bd.*, 172 Cal.App.2d 446, 341 P.2d 838, 839 (1959)(Canadian taxes withheld from payments by Canadian trust to California resident beneficiary were not "net income taxes" because applicable to entire distribution without possibility of deduction, exemption, or credit); *Crocker–Anglo Nat'l Bank v. Franchise Tax Bd.*, 179 Cal.App.2d 591, 3 Cal.Rptr. 906, 907–08 (1960)(following *Burnham*).

■ ¶16 We acknowledge that these California cases were decided after Arizona enacted former A.R.S. section 43–128, and therefore no presumption arises that the legislature adopted their reasoning along with the statutory text. But these cases are not "irrelevant" as the Shorts argue. To the extent that they conform to our understanding of the applicable public policy, we may follow them as persuasive authority. *See City of Phoenix v. Mori,* 182 Ariz. 612, 614, 898 P.2d 990, 992 (App.1995). We also find them convincing on their own merits.

¶17 The Shorts' reliance on *Henley v. Franchise Tax Bd.*, 122 Cal.App.2d 1, 264 P.2d 179 (1954), is misplaced. Unlike *Burnham, Clemens,* and *Crocker–Anglo National Bank, Henley* dealt with a 1917 Canadian non-resident tax on Canadian-source income that allowed taxpayers to claim deductions in calculating the tax base. It is accordingly not surprising that *Henley* allowed a credit for that tax against the taxpayer's California income tax liability. As the *Burnham* court stated, *Henley* "dealt with an earlier Canadian statute differing very substantially from the law under which the tax with which we are here concerned was imposed." 341 P.2d at 837. ADOR's interpretation therefore finds support in the *Burnham* line of decisions.

### The Shorts chose to be taxed under Part XIII

■ ¶18 Finally, the Shorts contend that the Canadian income tax laws applicable to

---

**1.** ADOR and its predecessor have interpreted the statute consistently. Arizona Administrative Code R15–2–1071(B)(1), which was in effect in 1989, provided that "[t]he tax imposed by another state or country must be an income tax imposed on the net income (gross income less any allowable deductions) of the taxpayer...."

**326**

non-residents in 1989 granted certain deductions and exclusions from income and that they therefore were entitled to a credit for their Canadian tax liability even under ADOR's interpretation of § 43–1071(A). We disagree.

¶ 19 By their express terms, the 1989 versions of Parts I and XIII of the Canadian Income Tax Act created two separate and distinct taxes. Part I, section 2(1) imposed an income tax on the taxable income of persons who resided in Canada for all or part of each taxable year. Part XIII, section 212(1) imposed a twenty-five percent tax on Canadian pension benefits paid to non-Canadian residents during the taxable year. Only the tax provided by Part I, section 2 permitted deductions and exclusions in calculating the tax base. The tax provided by Part XIII, section 212(1) applied to the specified Canadian income source "without any deduction from those amounts whatever." Part XIII, section 214.

¶ 20 While it is true that the Shorts could have elected to be taxed under Part I, section 2 instead of under Part XIII, section 212(1), see Part XIII, section 217, they did not do so.[2] Accordingly, the specific Canadian income tax actually imposed upon them, and for which they sought a credit under § 43–1071(A), permitted no deductions, exclusions, or other income adjustments in determining the tax base. Therefore, it was not a "net income tax."

### CONCLUSION

¶ 21 We affirm the tax court's holding. Because the Shorts are not the prevailing party, we deny their request for attorney's fees under A.R.S. section 12–348. The judgment is affirmed.

GRANT, P.J., and McGREGOR, J., concur.

---

**2.** Although the Shorts complain that they are being unfairly subjected to double taxation, the record here indicates that they are, like most Arizona residents, being assessed income taxes at two levels: 1) national (federal or Canadian) and 2) state (Arizona).