25 P.3d 745

Ramon L. and Gloria J. RANGEL; Luis A. and Carmen C. Ojeda; Ramon G. and Idalia Gonzalez; Robert L. and Linda L. Scott; and Cosme B. and Gloria H. Martinez, Plaintiffs–Appellants,

v.

Arizona DEPARTMENT OF REVENUE, an agency of the State of Arizona, Defendant–Appellee.

No. 1 CA–TX 00–0014.

Court of Appeals of Arizona, Division 1, Department T.

May 29, 2001.

Daniel T. Garrett LLC, by Daniel T. Garrett, Mesa, Co–Counsel for Plaintiffs–Appellants.

Jones, Day Reavis & Pogue, by Maryann B. Gall, Columbus, OH, and Thomas N. Molins, Chicago, IL, Co–Counsel for Plaintiffs–Appellants.

Janet Napolitano, Attorney General, by Christine Cassetta, Assistant Attorney General, Phoenix, Attorneys for Defendant–Appellee.

## OPINION

WEISBERG, Judge.

¶ 1 Plaintiffs–Appellants (the taxpayers) are five married couples who resided in Arizona and received wage income from fulltime employment in Nogales, Sonora, Mexico, in tax years 1993 and 1994. The taxpayers' employer, a maquiladora,[1] withheld Mexican income taxes from their wages and remitted the taxes to the Mexican government on the taxpayers' behalf. The taxpayers reported their Mexican wage income on their Arizona individual income tax returns for 1993 and 1994 and claimed credits under Arizona Revised Statutes (A.R.S.) section 43–1071(A)(Supp.2000)[2] for the taxes they had paid on those wages.

¶ 2 The Arizona Department of Revenue (ADOR) disallowed the claimed credits on the taxpayers' 1993 and 1994 returns and assessed additional taxes, interest and penalties. The taxpayers challenged the assessments through the administrative process. The Arizona Board of Tax Appeals sustained the assessments. In the taxpayers' judicial appeals, the tax court ruled for ADOR.

¶ 3 The dispositive question below and on appeal is whether Mexico's tax on nonresidents' wage income from services performed in Mexico is a "net income tax" eligible for the credit against Arizona individual income tax liability provided by A.R.S. section 43–1071(A). Pursuant to A.R.S. section 12–2101(B) (1994), this court has jurisdiction over this appeal.

## DISCUSSION

¶ 4 Subject to certain conditions, A.R.S. section 43–1071(A) allows a credit[3] against Arizona individual income taxes "for *net income taxes* imposed by and paid to another state or country on income taxable under this chapter." (Emphasis added.) To qualify, the foreign tax must be on the taxpayer's "net income." Specifically, section 43–1071(A) allows "a credit only for other countries' income taxes that allow deductions, exclusions, or other income adjustments in

---

1. Gerard Morales, Benjamin Aguilera, and David K. Armstrong (Snell & Wilmer, L.L.P.), *An Overview of the Maquiladora Program* (1994), at http://www.dol.go v/dol/ilab/public/media/reports/nao/maquilad.htm (hyperlinked footnotes omitted), describes the Maquiladora program as follows:

   Legally, the Maquiladora program is a creature of the Mexican Executive branch of government pursuant to the powers granted to that branch under article 89(1) of the Political Constitution of the United Mexican States. Originally, a company organized under the Maquiladora Program was the only type of company expressly authorized to have one hundred percent foreign ownership without prior authorization.

   The rather privileged position which maquila operations occupy under the Mexican legal system has been justified on the basis of the need to promote foreign investment as well as on the essential nature of those operations. Foreign investment is viewed by the Mexican Government as a way to transfer technology to Mexico, to upgrade workers' skills and to increase demand for Mexican goods. Furthermore, since, ordinarily, maquiladoras are required to export most of their production, they do not constitute recognizable competition for entities dependent upon the Mexican domestic market.

2. A.R.S. section 43–1071(A) provides:

   Subject to the following conditions, residents shall be allowed a credit against the taxes imposed by this chapter for net income taxes imposed by and paid to another state or country on income taxable under this chapter:

   1. The credit shall be allowed only for taxes paid to the other state or country on income that is derived from sources within that state or country and that is taxable under its laws irrespective of the residence or domicile of the recipient.
   2. The credit shall not be allowed if the other state or country allows residents of this state a credit against the taxes imposed by that state or country for taxes paid or payable under this chapter.
   3. The credit shall not exceed such proportion of the tax payable under this chapter as the income subject to tax in the other state or country and also taxable under this title bears to the taxpayer's entire income upon which the tax is imposed by this chapter.

3. We are required to construe Arizona tax exemptions and credits strictly against the taxpayer, *Davis v. Arizona Dep't of Revenue*, 197 Ariz. 527, 529–30, ¶ 12, 4 P.3d 1070, 1072–73 (App. 2000).

calculating the tax base, and thereby are 'net income taxes.'" *State ex rel. Arizona Dep't of Revenue v. Short,* 192 Ariz. 322, 324, ¶ 12, 965 P.2d 56, 58 (App.1998). *See* Arizona Administrative Code (A.A.C.) R15–2–1071 (1997) (a "net income tax" is one that "grants deductions or exemptions from gross income").

¶ 5 During 1993 and 1994, Article 1 of Mexico's Income Tax Law imposed on residents of other countries, who had no permanent establishment or fixed base in Mexico, an obligation to pay taxes on the income they derived "from sources of wealth situated in national territory." Articles 144 through 146 of the Income Tax Law provided the specifics of the nonresident income tax. The tax applied to all income received "in cash, in assets, in services or in credit." Article 144. Article 145 set the tax at "30% of the income obtained, without any deduction."

¶ 6 Article 146 then modified the general tax imposition provision of Article 145 as follows:

> Exempt from the payment of the tax to which the preceding article refers is income from salaries and, in general, for furnishing services under dependent employment paid by residents abroad, whether individuals or legal entities, who do not have a permanent establishment in the country, or if they have such, if the services are not related to such establishment, provided that the service rendered has a duration of less than 183 days in a period of 12 months.

> When the service rendered has a duration of 183 days or more in a period of 12 months, the following shall be applied:

> I. Income which does not exceed 32,-000,000 pesos is exempt.

> II. Income which exceeds the amount stipulated in the preceding item but which is not over 256,000,000 pesos is taxable at the rate of 15% on the surplus over 32,000,000 pesos.

> III. The surplus income over 256,-000,000 pesos is taxable in the terms of the preceding article [30%].[4]

¶ 7 In addition, other exemptions from income applied to nonresident maquiladora workers. Article 145 exempted director's fees and auditor's fees. Also, for tax year 1993, the Mexican Treasury Department advised by Official Letter (1) that vacation pay would not be considered part of taxable income, and (2) that "managers and high executives,"[5] other than those in production or quality control, were not subject to the nonresident Mexican income tax if their income from such tasks was taxable in their country of residence.

¶ 8 ADOR argues that these statutes and administrative principles of Mexican income tax law do not impose a tax on "net income," and that such taxes are therefore not creditable against Arizona individual income tax liability under A.R.S. section 43–1071(A). ADOR contends that the tax on Mexican-source income of nonresidents does not allow "deductions, exclusions, or other income adjustments in calculating the tax base" as clarified by *Short.* ADOR characterizes the tax as a "gross income tax because it applies to the gross amount of income that a nonresident receives for work done in Mexico without any allowance for deductions from gross income." In other words, its view is that the applicable Mexican tax laws merely shape and define gross income, rather than provide any deductions therefrom. ADOR therefore asserts that the various gross tax exclusions afforded nonresidents do not constitute income tax "deductions" or "exemptions from gross income," as these terms are generally used in our tax laws.

¶ 9 The tax court agreed:

> [E]xemptions from tax do not reduce gross income, because they are not considered income for tax purposes. The items that Taxpayers rely on to support their position that the Mexican tax at issue is a net income tax are nothing more than ex-

---

4. Effective for tax year 1994, Articles 145 and 146 of the Income Tax Law were amended to substitute "36,000 new pesos" for "32,000,000 pesos" and "290,000 new pesos" for "256,000,-000 pesos."

5. This exemption was limited to those who entered Mexican territory for the *sole* purpose of performing supervisorial or managerial tasks in a maquiladora.

emptions from tax. The items are not subtracted from gross pay to arrive at a net pay that is subsequently taxed; and these amounts do not constitute gross pay in the first place. Further, Taxpayers' interpretation of net income tax renders the decision in *State v. Short* meaningless. 192 Ariz. 322, 965 P.2d 56 (App.1998). If any type of exemption made a tax a net income tax, because there are no taxing systems that tax everything and everyone, all taxing systems would be net income tax systems.

¶ 10 We however disagree. If the Mexican system only allowed a non-individualized flat percentage reduction or a non-individualized fixed sum deduction on the income earned, without any consideration for a taxpayer's individualized circumstances, then presumably it would be a gross income tax. In such event, the tax would be analogous to the taxes imposed in the California cases cited in *Short* where the foreign government withheld a discrete sum on all corporate dividends prior to distribution without allowing any adjustments for the individual circumstances of the individual taxpayer. 192 Ariz. at 325, ¶¶ 15–17, 965 P.2d at 59 (citing *Burnham v. Franchise Tax Bd.*, 172 Cal.App.2d 438, 341 P.2d 833 (Dist.1959); *Clemens v. Franchise Tax Bd.*, 172 Cal.App.2d 446, 341 P.2d 838 (Dist.1959); *Crocker–Anglo Nat'l Bank v. Franchise Tax Bd.*, 179 Cal.App.2d 591, 3 Cal.Rptr. 906 (Dist.1960)). Thus, in *Short*, we concluded that a "net income tax" was one that was imposed by the foreign jurisdiction on income after it had been shaped by permitted deductions, exclusions or other income adjustments based upon the taxpayer's personalized circumstances. *Id.* at 324, ¶ 12, 965 P.2d at 59.

¶ 11 Here, we conclude that the applicable Mexican provisions allow true deductions. Taxpayers may reduce their taxable income by excluding compensation received as director's or auditor's fees, or as "managers and high executives" involved in non-production or quality-control areas. Vacation pay may also be subtracted from income before it is taxed.

¶ 12 Arizona's individual income tax, which is clearly one on "net income," contains sev-eral provisions that produce similar results, although in different circumstances. For example, A.R.S. section 43–1023 (Supp.2000) provides "exemptions" ranging from $1,500 to $10,000 for taxpayers or their spouses who are visually impaired or over 65 years of age, taxpayers' dependents, and taxpayers' parents or ancestors of parents over 65 who live with them and require assistance in daily living. In the same manner, section 43–1043 (2000) provides personal exemptions of $2,100, $4,200, or $6,300 for taxpayers and their families. These are quite plainly not definitional limitations on the scope of gross income. They are deductions, exemptions, subtractions, or exclusions taken from gross income in computing taxable income; and, in the way they shape taxable income, are no different from the "exemptions" afforded by Articles 145 and 146 of Mexico's Income Tax Act for 1993 and 1994.

¶ 13 ADOR's argument has mistakenly focused on the labels employed by the Mexican tax provisions and, because those labels are different from those employed by Arizona's tax provisions, concluded that the Mexican tax is a gross income tax. But, looking past the labels, it is clear that the Mexican tax is a net income tax. It is a net income tax because it has afforded individualized deductions from pre-tax income when arriving at the final taxable income amount. That is the identical process, although with different reductions, that Arizona's net income tax employs. The applicable Mexican provisions, therefore, impose a net income tax for the purposes of A.R.S. section 43–1071(A).

¶ 14 The taxpayers request an award of attorney's fees incurred in the tax court and on appeal pursuant to A.R.S. section 12–348(B) (Supp.2000). We grant the request, subject to the limitations imposed by section 12–348(D) and (E)(3) and (5) (Supp.2000). The taxpayers may establish the amount of their award by complying with provisions of Rule 21(C) of the Arizona Rules of Civil Appellate Procedure.

### CONCLUSION

¶ 15 The judgment is reversed and remanded with directions to enter judgment for the taxpayers.

CONCURRING: RUDOLPH J. GERBER, Judge, MICHAEL D. RYAN, Judge.